238

NORTH CAROLINA COMMISSION OF INDIAN AFFAIRS, Petitioner,

v.

UNITED STATES DEPARTMENT OF LABOR, Respondent.

National Association of Counties; National League of Cities; United States Conference of Mayors; American Public Welfare Association; National Council of Local Public Welfare Administrators; City of Stockton, California; County of Los Angeles, California; County of Onslow, North Carolina; City of Portland, Oregon; City of Boston, Massachusetts; Broward Employment and Training Administration; State of Maine; Franklin County, New York, Employment and Training Administration; Alameda County Training and Employment Board; City of San Jose, California; Memphis and Shelby County, Tennessee, Consortium; City of Bridgeport, Connecticut; City of Camden, New Jersey; Toledo Area Consortium; City of Los Angeles, California; City of Detroit, Michigan; and State of Vermont, Amici Curiae.

NORTH CAROLINA DEPARTMENT OF NATURAL RESOURCES AND COMMUNITY DEVELOPMENT, Petitioner,

v.

UNITED STATES DEPARTMENT OF LABOR, Respondent.

WILSON COUNTY and Wilson County Technical Institute, Petitioners,

v.

UNITED STATES DEPARTMENT OF LABOR and North Carolina Department of Natural Resources and Community Development, Respondents.

Nos. 82–1936(L), 83–1079 and 83–1161.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 3, 1983.

Decided Jan. 12, 1984.

Elizabeth Anania, Nashville, Tenn. (Rufus L. Edmisten, Atty. Gen., Daniel McLawhorn, Raleigh, N.C., on brief), George A. Weaver, L.H. Gibbons, Wilson, N.C. (Carr, Gibbons, Cozart & Jones, Wilson, N.C., on brief), for petitioners.

Steven J. Mandel, Jane C. Snell, Washington, D.C. (Francis X. Lilly, Deputy Solicitor, William H. DuRoss, III, Associate Sol. for Employment and Training, Harry L. Sheinfeld, Counsel for Litigation, E. Kathleen Shahan, Washington, D.C., on brief), for respondent.

Robert N. Sayler, John E. Heintz, Karen H. Rothenberg, Joan E. Donoghue, Covington & Burling, Washington, D.C., on brief, for amici curiae.

Before ERVIN and CHAPMAN, Circuit Judges and BUTZNER, Senior Circuit Judge.

CHAPMAN, Circuit Judge:

The principal issue in this appeal by the North Carolina Commission of Indian Affairs (Commission) and the North Carolina Department of Natural Resources and Community Development (Department) (collectively, North Carolina or the State) is whether the Secretary of Labor may order repayment of $135,611.77 in misspent funds under the Comprehensive Employment and Training Act of 1973, Pub.L. 93–203, 87 Stat. 839, 29 U.S.C. § 801 *et seq.* (1973) (1973 CETA Act). North Carolina claims that, prior to amendments enacted in 1978, the Secretary of Labor's sole remedy when funds were improperly expended was to withhold future grant moneys. In reliance on the Supreme Court's decision in *Bell v. New Jersey and Pennsylvania,* —— U.S. ——, 103 S.Ct. 2187, 76 L.Ed.2d 313 (1983), which held that the Secretary of Education was entitled to order recoupment of misspent grant funds under the Elementary and Secondary Education Act of 1965 (ESEA), Pub.L. 89–10, 79 Stat. 27, as amended, 20 U.S.C. § 2701 *et seq.* (1976 ed. Supp. V) and in accord with the decision of the Court of Appeals for the Third Circuit in *Atlantic County New Jersey v. United States Department of Labor,* 715 F.2d 834 (3rd Cir.1983), we hold that the authority to require repayment of improper expenditures existed under the 1973 CETA Act. Finding also that there was substantial evidence to support the Secretary of Labor's conclusion that the funds were improperly expended or inadequately monitored and that North Carolina was responsible for insuring that the grant was properly administered, we affirm the Secretary's repayment order.[1]

### I

The two North Carolina governmental agencies, as "prime sponsors" under the 1973 CETA Act, received grant funds from the Department of Labor and contracted with subgrantees for expenditure of the funds. Grantees and subgrantees receive CETA funds prior to expenditure instead of being reimbursed by the Department of Labor after moneys are expended. Since the grants were awarded prior to 1978, the provisions of the 1973 Act control. Following an audit and a grants officer's determination that certain funds had been misused,[2]

1. The Administrative Law Judge (ALJ), in his orders which became final decisions of the Secretary of Labor pursuant to 20 C.F.R. § 676.-91(f) (1982) included an "advisory opinion" that subgrantees Wilson County and Wilson County Technical Institute were liable to North Carolina for misspent monies. We decline to rule on this question because of lack of jurisdiction. There is no controversy because the ALJ did not have the authority, nor did he purport, to require the two subgrantees to do anything.

2. The CETA audit report of the Commission covered the period from November 1, 1974 through December 31, 1975. The Department

the Administrative Law Judge (ALJ) issued orders instructing the Commission to repay $34,147.19 and the Department, $101,-464.58.[3] These orders became final decisions of the Secretary.

II

■ North Carolina questions whether the rule of *S.E.C. v. Chenery*, 332 U.S. 194, 196, 67 S.Ct. 1575, 1577, 91 L.Ed. 1995 (1947) that "a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency" precludes this court from affirming the ALJ's order based on an interpretation of the 1973 CETA Act that differs from the ALJ's interpretation. (The ALJ found that the "1973 statute by implication authorized the Department of Labor to obtain repayment from the State of moneys, paid to ineligible applicants." Based on the reasoning of *Bell*, we find that repayment authority is found in the language of the 1973 statute.) We do not, however, perceive there to be a *Chenery* problem in the instant case because the question of interpretation of a federal statute is not "a determination or judgment which an administrative agency alone is authorized to make." *Chenery, supra.* A similar question of statutory interpretation was at issue in *Milk Transport v. Interstate Commerce Commission*, 190 F.Supp. 350 (D.Minn.1960), *aff'd per curiam* 368 U.S. 5, 82 S.Ct. 15, 7 L.Ed.2d 16 (1961). The court concluded that *Chenery* was not applicable:

> We are not concerned here with a judgment which only the Interstate Commerce Commission can make. The ex-

pertness of the Commission does not make it better qualified than this court to interpret the phrase ... involved in this action. The interpretation here is wholly different from what it is in the case where Congress specifically entrusts an administrative agency, because of its special competence, with the task of defining or interpreting general words or setting up standards or rules of conduct. We are interpreting the scope of a federal statute and this task is not peculiar to an administrative agency. 190 F.Supp. at 355. (footnote omitted).

III

■ The Secretary of Labor raises three grounds in support of his authority to require repayment by North Carolina. First, the Secretary argues that the 1973 Act includes a right of recovery. The Secretary also contends that the 1978 Act, which Congress amended to provide expressly for recovery of misused funds, may be applied retroactively to reach funds administered under the earlier act. Labor's third argument is that there is a common law right of recovery. Following the lead of *Bell*, we find that a right of recovery exists under the 1973 Act, and therefore we need not reach the issues of whether recovery is also authorized by retroactive application of the 1978 amendments or by the common law.

In *Bell* the Court found that the argument that ESEA contained a recoupment right was supported by the language, the legislative history and the administrative interpretation of the statute. We are persuaded that the language, the evidence of legislative intent, the administrative inter-

---

was audited for the period from June 1, 1974 through September 30, 1977.

3. The Commission was found to have violated the 1973 Act by using CETA funds to pay the total amount of salaries of employees who spent time working with federal grants other than CETA. Monies from the various federal programs should have been allocated on a pro rata basis for the salaries. Certain participants were found to have been ineligible because of kinship ties with other employees. Duplicate time sheets were submitted for one participant.

The ALJ found that the Department's monitoring of its subgrantees was inadequate to assure that only eligible participants were enrolled in the program. The ALJ also found that the Department failed to resolve audits of its subgrantees in a timely manner and that the Department was liable for the costs disallowed subsequent to these audits. North Carolina in its brief and at oral argument focused primarily on the Department's liability.

pretation and the overall rationale of the 1973 CETA Act are sufficiently similar to that of ESEA to mandate a finding that the Department of Labor may order repayment of misapplied moneys.

Section 602(b) of the 1973 CETA Act provided in part:

> The Secretary may make ... necessary adjustments in payments on account of overpayments or underpayments. The Secretary may also withhold funds otherwise payable under this chapter, but only in order to recover any amounts expended in the current or immediately prior fiscal year in violation of any provision of this chapter.

North Carolina contends that the withholding provision gives the only available remedy in the event of noncompliance by a grantee. In *Bell,* however, the Court found that in a similar provision of ESEA,[4] the "plain language of the statute" recognized the right of the federal government to overpaid funds. 103 S.Ct. at 2193. The *Bell* court also found that to adopt the State's view of set-off as the only remedy would allow the State to escape liability for misuse of the moneys while penalizing those who were intended to benefit from the programs by reducing the amount of funds that the beneficiaries would actually receive. 103 S.Ct. at 2192 n. 5 and 2193 n. 8.

North Carolina seeks to distinguish § 602(b) from the provision of ESEA relied on in *Bell* to authorize repayment. The State's argument is that only the withholding sanction, and not the adjustments in payments language, applies to recoupment of amounts expended in violation of the act. North Carolina contends that any other construction would render the last sentence of § 602(b) redundant or largely superfluous. The argument is refuted, however, by the fact that ESEA also provided for withholding funds from a State that failed to comply with the requirements of the program. Section 146, 20 U.S.C. § 241j. Moreover, in providing that the Secretary "may *also* withhold funds" the language of § 602(b) indicates that remedies other than withholding are available to the Department of Labor.

North Carolina argues that, because the 1978 amendments expressly provided for right of repayment,[5] there was no similar right under the 1973 Act, otherwise the later amendments would be redundant. The *Bell* Court was faced with the issue of later amendments to ESEA that clearly provided for the federal government's right to demand repayment when states misused grant moneys. The Court concluded that the discussion of the 1978 amendments to ESEA, which were of persuasive value, revealed that Congress thought that recipients were already liable for misused funds. 103 S.Ct. at 2194.

The comments made by members of Congress during the debates on the 1978 CETA amendments indicate that they assumed the existence of a right of recovery and approved of the Department of Labor's pre-1978 practice of actually recouping funds.[6]

---

4. Section 207(a)(1) of ESEA provided:
 > The Commissioner shall, subject to the provisions of § 208, from time to time pay to each State, in advance or otherwise, the amount which the local educational agencies of that State are eligible to receive under this part. Such payments shall take into account the extent (if any) to which any previous payment to such State educational agency under this title (whether or not in the same fiscal year) was greater or less than the amount which should have been paid to it.

5. Section 106(d)(1) of the 1978 Act provided:
 > [T]he Secretary shall have authority to terminate or suspend financial assistance in whole or in part and order such sanctions or corrective actions as are appropriate, including the repayment of misspent funds from sources other than funds under this chapter and the withholding of future funding.

6. In *Atlantic County* the court reviewed comments from the Congressional debates:
 > Rep. Hawkins, the amendment's floor manager, reported recovery of $23 million in misused CETA funds. 124 Cong.Rec. 25168 (1978). Rep. Cornell pointed to Chicago's repayment of $1 million in misspent CETA funds. 124 Cong.Rec. 25221 (1978). Representatives Maguire and Collins criticized the Department of Labor for having recovered only about 15% of the misused funds. 124 Cong.Rec. 31021–31026 (1978). Senator Bellmon expressed the hope that the 1978 amendment would encourage more aggres-

The Congressional intent in amending the CETA Act in this manner appears to have been to clarify a pre-existing right and not to provide Labor with new authority.

The agency's practice of ordering that funds be reimbursed prior to the 1978 amendments also supports Labor's argument that a right of recovery existed under the 1973 Act. As observed by the court in *Atlantic County,* recoupment under CETA's predecessors amounted to "more than the 'long held' view of an agency which the *Bell* court found persuasive." 715 F.2d at 836 (citation omitted). The CETA Act of 1973 replaced a number of earlier federal employment and training programs.[7] Although the earlier laws provided no express right of recoupment, the Secretary of Labor routinely audited grantees, disallowed costs and recovered misspent funds. *See Midlands Community Act Agency,* 73-1 BCA ¶ 9790 (November 30, 1972) (EOA and MDTA); *Metropolitan Denver Construction Opportunity Policy Committee,* 74-2 BCA ¶ 10,749 (November 30, 1973) (MDTA); *Cooperative League of U.S.A.,* 74-2 BCA ¶ 10,768 (August 14, 1974) (MDTA), *aff'd,* 578 F.2d 1390 (Ct.Cl., 1978).

North Carolina's final objection is that the CETA Act of 1973 does not meet the mandate of *Pennhurst State School and Hospital v. Halderman,* 451 U.S. 1, 17, 101 S.Ct. 1531, 1539, 67 L.Ed.2d 694 (1981) that Congress act unambiguously when it intends to impose a condition on the grant of federal money. We think that the Supreme Court's two grounds for distinguishing *Pennhurst* with respect to ESEA are equally applicable to CETA. The Court found that the plain language of ESEA was sufficiently clear to meet *Pennhurst's* requirement of legislative clarity and that *Pennhurst* involved imposition of an unexpected condition of compliance while in *Bell* the Court was concerned with remedies availa-

ble against a noncomplying State. 103 S.Ct. at 2197 n. 17.

## IV

 Having decided that the Department of Labor has the authority to recoup misspent funds, we must address the issue of whether there is substantial evidence to support the Secretary's conclusion that the moneys were improperly expended. 29 U.S.C. § 817(b) (1978). The State argues, however, that it was not responsible for these instances of inadequate administration. We disagree. In the overall scheme of the CETA Act, although a grantee may enter into contracts and subgrants, the grantee retains the responsibility for development, approval and operation of all grants and subgrants. *Milwaukee County v. Peters,* 682 F.2d 609, 612–613 (7th Cir.1982). The regulations provide that the prime sponsor shall require that its contractors and subgrantees adhere to the requirements of the Act, regulations and other applicable law. 29 C.F.R. § 98.27. North Carolina's responsibility under the legislative scheme is clear and the Secretary's decision is supported by substantial evidence.

AFFIRMED.

---

sive recoupment by clarifying the Department's authority to recover funds. 124 Cong. Rec. 27789 (1978). 715 F.2d at 836.

**7.** The Manpower Development and Training Act of 1962 ("MDTA"), Pub.L. No. 87–415, 76 Stat. 23, 42 U.S.C. § 2571 *et seq.* (1966) (re-

pealed 1973), the Economic Opportunity Act of 1964 ("EOA"), 78 Stat. 508, 42 U.S.C. § 2701 *et seq.* (1976) (repealed 1981), and the Emergency Employment Act of 1971 ("EEA"), Pub.L. No. 92–54, 85 Stat. 146, 42 U.S.C. § 4871 *et seq.* (1976).