**ONSLOW COUNTY, NORTH CAROLINA, Petitioner,**

v.

**UNITED STATES DEPARTMENT OF LABOR, Respondent.**

No. 84-1915.

United States Court of Appeals, Fourth Circuit.

Argued April 4, 1985.

Decided July 22, 1985.

John E. Heintz, Washington, D.C. (Robert N. Sayler, Covington & Burling, Washington, D.C., on brief), for petitioner.

Bette J. Briggs, Washington, D.C. (Francis X. Lilly, Sol. of Labor, Karen I. Ward, Associate Sol., Allen H. Feldman, Washington, D.C. Counsel for Appellate Litigation, on brief), for respondent.

Before PHILLIPS, CHAPMAN and SNEEDEN, Circuit Judges.

JAMES DICKSON PHILLIPS, Circuit Judge.

Onslow County, North Carolina (Onslow) petitions for review of a decision of the Secretary of Labor (Secretary) that disallowed certain expenditures by Onslow under the Comprehensive Employment Training Act (CETA) and required Onslow to repay misspent grant money out of non-grant funds. Although we affirm the Secretary's finding that funds were misspent, we vacate the Secretary's decision and remand for discretionary consideration of Onslow's contention that because of equitable considerations it should not be required to repay the funds.

I

In 1974, Onslow initiated a CETA program in which it was the prime sponsor. Under the program, Onslow received federal funds that it used to fund a variety of public employment programs. The Secretary did not complete an audit of the Onslow program until 1979 despite a regulation promulgated by the Secretary that directed performance of an audit within two years of initiation of the program. *See* 29 C.F.R. § 98.6(c) (1981).

The Secretary's 1979 audit and a subsequent audit in 1981 led the Secretary administratively to disallow a total of $748,457 of Onslow's expenditures as not authorized under CETA and its regulations. The audits covered the period from initiation of Onslow's program until its termination in 1979. After a hearing an administrative law judge found that Onslow misspent only $339,221, and therefore, reduced the disallowance to that amount. The Secretary refused to undertake further review despite his authority under 29 U.S.C. § 816(d)(2) (Supp. II 1978)[1] to grant Onslow a reprieve in equity and ordered repayment of the misspent funds. This petition for review followed.

II

Before the 1978 amendments to CETA, there was no express provision in the Act for recoupment by the Secretary of misspent CETA funds from a sponsor's non-grant funds. The 1978 amendments expressly provided such a remedy, but this court has held that even before the 1978 amendments, the Secretary had implicit statutory authority to recover misspent funds from non-grant sources. *See North Carolina Commission of Indian Affairs v. United States Department of Labor*, 725 F.2d 238, 241–42 (4th Cir.1984); *see also Mobile Consortium of CETA, Alabama v. United States Department of Labor*, 745 F.2d 1416, 1418 (11th Cir.1984) (finding persuasive and adopting the reasoning of four circuit opinions holding that the 1973 Act created an implied power of recoupment in the Secretary).

Despite reliance on the earlier implied recoupment authority, the Secretary has never promulgated regulations establishing guidelines or procedures for recouping misspent funds. Instead, the Secretary developed the sanction through case by case adjudication. In pursuing recoupment, the Secretary developed a policy of insisting on a zero error rate in spending by sponsors despite relatively large scale spending and strict time pressures in CETA programs.

Onslow now challenges the Secretary's authority to recoup misspent funds from non-grant funds under the 1973 Act in the absence of explicit statutory authority *and* an implementing rule. Onslow also contends that the Secretary's failure to audit its program within two years in accordance with the Secretary's own regulations bars recoupment of misspent funds. Next, Onslow contests the Secretary's findings that it misspent funds. Finally, Onslow contends that even if Onslow misspent funds, the Secretary failed to perform his duty under 29 U.S.C. § 816 to make a discretion-

---

1. Congress repealed the provisions of CETA in Pub.L. 97–300, Title I, § 184(a), 96 Stat. 1357 (1982). Section 816(d)(2) provided that the Secretary should order repayment from non-CETA funds for violations of certain sections of the Act "unless, in view of special circumstances as demonstrated by the recipient, the Secretary determines that requiring repayment would not serve the purposes of attaining compliance with such sections."

ary determination whether it should waive the repayment sanction in view of the equities.

### III

#### A

■ Though, as indicated, this court has previously determined that the Secretary has authority to recoup misspent funds from non-grant sources under the 1973 Act, we have not before considered Onslow's related contention that the Secretary cannot utilize the recoupment sanction in the absence of an implementing rule promulgated in accordance with the APA.

The Act, 29 U.S.C. § 828(a)(1) (Supp. II 1978), provided that "any condition for receipt of financial assistance shall be deemed a rule to which [APA, 5 U.S.C.] section 553 applies." Contrary to Onslow's assertion, we do not read this as a mandate that the Secretary translate his entire statutory authority to impose sanctions for misspending into rules promulgated in accordance with the APA. Assuming, but not deciding, that § 828 requires that all conditions on the receipt of funds be promulgated by rule,[2] we conclude that Congress did not intend the term "condition" to refer to post-grant sanctions, but rather, intended it to apply only to conditions *precedent* to funding or spending.

Although "condition" was not defined in § 828, Congress used the term in the 1973 Act, 29 U.S.C. § 815 (1976) to refer to reports that the recipient must file in order to receive funds. And although § 815 was entitled "Conditions for receipt of financial assistance," sanctions were not mentioned in the provision. In the amended Act, 29 U.S.C. § 823 (Supp. II 1978), Congress again used the term to refer to requirements that recipients had to follow in obtaining and spending grant funds. Al-

though § 823 was entitled "Conditions applicable to all programs," it did not refer to remedies. Instead, Congress provided for remedies in § 816 entitled "Complaints and sanctions."

Hence, we find that Congress intended the term "conditions" to refer to substantive requirements that the recipient had to observe in receiving and spending funds and the term "sanctions" to refer to actions that the Secretary could take in response to a recipient's breach of conditions imposed by Congress by law or the Secretary by regulation. Hence, § 828(a)(1) did not require that the recoupment sanction be authorized by regulation.

Nor was the Secretary bound to implement the repayment sanction by informal rulemaking under general principles of administrative law. The decision of whether to proceed by rulemaking or individual adjudication is left primarily to agency discretion. *See NLRB v. Bell Aerospace Co.,* 416 U.S. 267, 292–94, 94 S.Ct. 1757, 1770–72, 40 L.Ed.2d 134 (1974). Although an agency may abuse its discretion if it relies on a case-by-case approach to set general standards, *see id.* at 294, we find no abuse in this case. The sanction at issue in this case, recoupment of funds, was applied in adjudications by the Secretary under predecessors to the CETA program, and its existence was implied by the language of the Act. *See Indian Affairs,* 725 F.2d at 241–42. The sanction was developed at the time Onslow participated in the program, and Onslow cannot now complain that the Secretary should have proceeded by rulemaking. Hence, we find that the Secretary has the right to seek recoupment against Onslow from non-grant funds.

#### B

■ The Secretary's failure to perform an audit within two years of initiation of

---

**2.** The Secretary argues that § 828(a)(1) does not command the Secretary to proceed by rulemaking in implementing conditions on receipt of assistance because the provision began, "[t]he Secretary *may* ... prescribe such rules ... as deemed necessary" (emphasis added). Giving "may" its usual permissive meaning, the Secretary contends that § 828 leaves to the Secre-

tary's discretion the choice of whether to proceed by rule or case-by-case adjudication. Since we find that the sanction in issue in this case is not a condition on the receipt of financial assistance subject to § 828(a)(1), we do not reach the issue of whether the Secretary must implement conditions by § 553 rulemaking procedures.

Onslow's program, as required by the Secretary's own regulation, 29 C.F.R. § 98.6 (1981),[3] does not bar his right to seek recoupment against Onslow. Congress did not provide a limitations period on recoupment or condition recoupment on timely audits in either the 1973 Act or the 1978 amendments. In the absence of a statutory limitation, the federal government normally is not bound by any condition or limitations period in asserting its rights. *See Guaranty Trust Co. v. United States,* 304 U.S. 126, 132–33, 58 S.Ct. 785, 788, 82 L.Ed. 1224 (1938). We find no congressional intent here to establish a limitations period or condition of recovery based on timely audits.

▆▆▆ Agency regulations not mandated by federal law are not entitled to the degree of judicial deference and enforcement due those promulgated under compulsion of law.[4] *See United States v. Caceres,* 440 U.S. 741, 749, 99 S.Ct. 1465, 1470, 59 L.Ed.2d 733 (1979). Agencies are free to relax procedural rules, such as the timely audit rule in issue in this case, when the ends of justice require it. *American*

*Farm Lines v. Black Ball Freight Service,* 397 U.S. 532, 539, 90 S.Ct. 1288, 1292, 25 L.Ed.2d 547 (1970). Only by showing substantial prejudice can a complaining party successfully challenge agency waiver of such a rule. *See id.*

We conclude that here the Secretary had good reason to waive the two year audit rule. The rule was established to aid the Secretary in insuring the integrity of the CETA program.[5] By establishing the goal of a two year audit limit, the Secretary presumably sought to encourage its staff to review programs quickly, and by holding out the prospect of an imminent audit, to deter misconduct by recipients. Due to understaffing, the Secretary in this instance was unable to adhere to the regulation. In view of Congress' command that the Secretary vigorously seek recoupment, however, reading the regulation as an internally formulated, judicially enforceable limitation on recoupment would contravene legislative intent. Here, the · Secretary's waiver of the regulation in face of its workload was a valid agency action furthering

---

**3.** The audit regulation read:

(c) The Secretary shall, with reasonable frequency, survey, audit, or examine, or arrange for the survey, audit or examination of grantees and their subgrantees and contractors using city or state auditors; or certified or licensed public accountants. Such surveys, audits, or examinations shall normally be conducted annually but not less than once every two years.

The Secretary contends that the regulation was implicitly superseded by regulations promulgated after the 1978 amendments, and therefore, certainly does not apply to the 1981 audit. *See Alameda County Training and Employment Board v. Donovan,* 743 F.2d 1267, 1270 (9th Cir.1984). We do not reach the issue in view of our finding that failure to comply with the regulation does not bar recoupment; but the regulation should at least apply during the period prior to the 1978 amendments under the holding of *Bennett v. New Jersey,* — U.S. ——, 105 S.Ct. 1555, 1559–62, 84 L.Ed.2d 572 (1985), which specifies that grant programs are generally governed by statutes and regulations in effect at the time of receipt of the funds.

**4.** Onslow cites to decisions holding that the statutory limit of 29 U.S.C. § 816(b) (Supp. II 1978), which requires the Secretary to issue a final

determination within 120 days of receipt of a CETA complaint, bars sanctions if the Secretary does not act within the requisite period. *See City of Edmonds v. United States Department of Labor,* 749 F.2d 1419, 1421–23 (9th Cir.1984); *Lehigh Valley Manpower Program v. Donovan,* 718 F.2d 99, 101–02 (3d Cir.1983). From this it is contended that failure to meet the two year audit requirement should similarly bar recoupment. We reject the analogy. Both the *Edmonds* and *Lehigh Valley* courts emphasized the statutory character of the limitations scheme at issue in those cases in finding the 120-day limit mandatory and jurisdictional instead of directory.

**5.** Onslow contends that the audit program was intended to confer important procedural benefits on recipients because it would serve to spot flaws in programs before a recipient's liability for misspent funds reached excessive limits. Although the Secretary may have considered this a secondary benefit, we view the regulation as being primarily designed to insure that recipients properly spent CETA funds and to facilitate recoupment of misspent funds. Congress expressed concern during the life of the CETA program that the Secretary was not doing enough to insure proper spending of funds. *See Indian Affairs,* 725 F.2d at 241–42 & n. 6.

the public interest in preventing abuses in the expenditure of public funds.

■ Further, Onslow does not demonstrate the type of prejudice necessary to challenge the Secretary's waiver of the rule. Waiver of a rule designed to allow an agency to reach a correct decision on the merits concerning liability of a party claiming the benefit of the rule will cause legally cognizable prejudice if the party is injured in its ability to present its case on the merits. *See Marshall v. Western Waterproofing Co.*, 560 F.2d 947, 952 (8th Cir. 1977) (no need to address question of compliance with regulation where violation did not prejudice the complaining party "in its defense on the merits"); *see also McKenna v. Seaton*, 259 F.2d 780, 783 (D.C.Cir.1958) (noting cases enforcing agency rules designed "for the obvious purpose of aiding the Government in reaching a correct decision"). To demonstrate prejudice in the required sense, it is not enough for a complaining party to show that it would have ceased its illegal conduct earlier had an agency adhered to internal rules designed primarily to guide agency operations. *See Irish v. SEC*, 367 F.2d 637, 639 (9th Cir. 1966) (no legal prejudice in fact that without agency's delay, broker who violated standards of conduct could have begun to "mend his fences" earlier).

We conclude that Onslow is here in the position of the broker in *Irish*. Onslow in no way suggests that the delay in the audit prejudiced its ability to defend on the merits. Rather, Onslow contends only that it would have mended its fences earlier had an audit occurred within two years. However, Onslow's misspending resulted from its own failure to run the program in compliance with the Act and the Secretary's regulations. The prime sponsor, not the Secretary, was given primary responsibility to ensure that programs complied with the law, *see Commonwealth of Kentucky Department of Human Resources v. Donovan*, 704 F.2d 288, 290 n. 4, 293–94 (6th Cir.1983); and a holding barring recoupment due to lack of a timely audit would shift this burden to the Secretary. Had Onslow desired a more timely audit, it could have sought an order compelling the agency action under APA, 5 U.S.C. § 706(1); it has no grounds now to claim immunity from liability due to the Secretary's delay. *See Irish*, 367 F.2d at 639.

## C

We find no error in the Secretary's factual determination that Onslow misspent funds. Under the Secretary's regulation, 20 C.F.R. § 676.90(b), Onslow had the burden to establish that its expenditures were allowable under CETA. *See Alameda County Training And Employment Board v. Donovan*, 743 F.2d 1267, 1269 (9th Cir.1984). Our review of the Secretary's determination that the expenditures were not legally allowable is under the substantial evidence standard. *Indian Affairs*, 725 F.2d at 242.

Onslow challenges the Secretary's ultimate disallowance of six classifications of spending. First it challenges disallowances resulting from inaccurate eligibility determinations, contending that the Secretary must in fairness accept some errors and cannot impose a zero-error rule requiring repayment of every dollar misspent. Second, Onslow contends that the Secretary is estopped from recouping funds illegally paid to teachers' aides because an official of the Secretary erroneously told Onslow that the aides were eligible. Similarly Onslow contests recoupment of expenses shifted from 1977 to 1978 on the erroneous advice of a representative of the Secretary.

Fourth, Onslow contests recoupment of certain administrative expenses on the basis that they were placed in administrative accounts by a simple accounting error. Finally, Onslow contests recoupment of funds expended in purchasing wood and transportation services without following required bidding procedures, and funds spent for unapproved day care expenses of CETA employees.

### (1)

■ We reject Onslow's contention that the Secretary cannot, as a matter of law,

insist on a zero-error rate by recipients in making eligibility determinations. Although Onslow may have grounds to seek a waiver in equity, *see* Part IV *infra*, nothing in the statute requires the Secretary to accept any level of erroneous determinations, and the legislative history to the 1978 amendments demonstrates no congressional intent for any *de minimis* level of error-tolerance. *Cf. Indian Affairs*, 725 F.2d at 241–42 n. 6 (several congressmen called for more aggressive recoupment during discussion of the 1978 amendments).

### (2)

■ The Secretary is not precluded from recovering amounts concededly improperly paid to teachers' aides and improperly shifted from 1977 to 1978 simply because a representative of the Secretary erroneously told Onslow that the expenditures were proper. Onslow benefited from the expenditure of these funds through the services received, and therefore, Onslow fails to show detriment, a necessary element of an estoppel defense against the government. *See Heckler v. Community Health Services of Crawford County, Inc.*, 467 U.S. 51, 104 S.Ct. 2218, 2224–25, 81 L.Ed.2d 42 (1984). Moreover, Onslow does not show that it could not have discovered that the expenditures were improper, which also bars the defense. *See id.* at ——, 104 S.Ct. at 2223–24 & n. 10. The Act places primary responsibility for ensuring compliance with the recipient, *see Kentucky Department of Human Resources*, 704 F.2d at 290 n. 4, 293–94, and in the absence of grounds to raise an estoppel defense, the Secretary's findings of improper spending

for teachers' aides and improper shifting of funds from 1977 to 1978 are not in error.[6]

### (3)

■ Regarding expenses improperly put into an administrative account, Onslow appears to concede that even if the Secretary permitted reallocation to the proper accounts, the expenditures would be improper due to overspending. Onslow's concession that it failed to follow mandatory bidding procedures on certain expenditures precludes reversal of the Secretary's finding that those expenditures were improper.[7]

Finally, no grounds exist to reverse the Secretary's finding that Onslow's day care expenditures were improper. Onslow concedes that the expenditures were not authorized by the Secretary's regulations, and Onslow fails to establish the elements necessary for an estoppel defense.

### IV

■ We conclude, however, that notwithstanding the Secretary's valid determination that legal liability was established, the Secretary neglected to perform the duty imposed upon him by 29 U.S.C. § 816(d)(2) (Supp. II 1978) to consider whether the recoupment remedy should be wholly or partially waived in view of any "special circumstances" that might be shown by Onslow.[8] The Secretary refused to undertake any discretionary review for that purpose, contending that he had delegated to the law judge the task of determining whether to waive recoupment in equity. Regardless of the Secretary's intentions and of his power to delegate the duty, a

---

6. The Secretary notes additional reasons to disqualify the expenditures that we need not reach in light of our finding that Onslow has no valid estoppel defense. The Secretary contends that even if he is estopped from asserting the ineligibility of teachers' aides for program funds, Onslow's expenditures should be disqualified for failure to follow regulations in transferring the aides to the CETA program. Further, even if the expenditures shifted from 1977 to 1978 are accepted as 1978 expenditures, the Secretary contends that Onslow overspent in 1978 providing grounds for recoupment.

7. Onslow contends that the cost of the items and services was as low as could be expected from bidding, but this argument should be addressed to the Secretary in the determination of whether the equities support a waiver of the recoupment remedy for parts or all of Onslow's improper spending.

8. *See supra* note 1 for text of § 816(b)(2).

matter we need not decide, the law judge in this case plainly stated that he believed he had no discretion to waive the remedy and therefore did not purport to exercise it. Hence, the duty has not to date been performed by anyone. We may not perform it, even were we disposed to do so.[9] But we believe that Onslow is entitled to have the discretion exercised by the Secretary under the express provisions of the statute, and join the Ninth Circuit in so holding. *See Quechan Indian Tribe v. United States Department of Labor,* 723 F.2d 733, 736–37 (9th Cir.1984).

Although the statute does not provide a framework for review of equity considerations raised by a recipient, the administrative law judge in this case acted reasonably in confining his inquiry to the issue of whether, as a legal matter, Onslow violated the Act or the Secretary's regulations in administering this program. As we see it, § 816 contemplates that the law judge will determine the amount to which the Secretary can potentially lay claim and leaves to the Secretary the decision, based on the circumstances and nature of the violations, of whether to exact the full measure of recoupment to which he is legally entitled.

Onslow has attempted before us to suggest the existence of sufficient special circumstances to justify waiver.[10] We express no opinion as to whether they warrant that relief which can only be given by the Secretary. We hold only that Onslow is entitled under § 816 to have the Secretary exercise the discretion conferred by that section. To that limited end, we will vacate the Secretary's decision and remand for the purpose indicated.

## V

In sum, we uphold the Secretary's right to order repayment of funds misspent despite the absence of a rule implementing the recoupment remedy and the failure of the Secretary to audit Onslow's program within two years of its initiation. We further conclude that the Secretary's findings that Onslow misspent funds are supported by substantial evidence. But because the Secretary failed to exercise his discretion whether or not to waive the recoupment remedy, we remand to the Secretary for discretionary consideration of the equitable considerations advanced by Onslow as a basis for waiver.

**AFFIRMED IN PART; VACATED AND REMANDED IN PART.**

---

**9.** The recent Supreme Court decisions in *Bennett v. Kentucky Department of Education,* — U.S. —, 105 S.Ct. 1544, 1549–50, 84 L.Ed.2d 590 (1985), and *Bennett v. New Jersey,* — U.S. —, 105 S.Ct. 1555, 1563, 84 L.Ed.2d 572 (1985), make clear that courts engaged in judicial review cannot themselves invoke equity powers to prevent the government from recovering from state grantees funds to which the government has a legally adjudicated right to repayment. We do not purport here to do that directly or to suggest that it should be done by the Secretary. We only exercise the power in judicial review to enforce a claimant's statutory right to have agency discretion exercised—up or down.

In the *Kentucky* and *New Jersey* cases, there was no suggestion, so far as we can tell, that the Secretary of Education had failed to exercise a comparable discretion to waive under parallel provisions of Title I of the Elementary and Secondary Education Act, 20 U.S.C. § 1234e(a); *see Bennett v. New Jersey,* — U.S. at —, 105 S.Ct. at 1563.

**10.** Onslow points to the Secretary's insistence on a zero-error rate in making eligibility determinations, the absence of regulations clearly warning recipients of the recoupment remedy and the zero-error rate rule, the absence of evidence of bad faith or incompetence in administration, the time pressure under which recipients had to utilize funds, the relatively minor deviations from the Secretary's regulation in the cases of Onslow's failure to follow bidding procedures and expenditures for day care services, the fact that some misspending resulted from erroneous advice from the Secretary's representatives, and the delay in auditing that may have delayed Onslow's recognition of the problems in its program.