**BOARD OF COUNTY COMMISSIONERS OF ADAMS COUNTY, COLORADO, Petitioner,**

**v.**

**UNITED STATES DEPARTMENT OF LABOR, Respondent.**

**No. 85–1914.**

United States Court of Appeals, Tenth Circuit.

Nov. 17, 1986.

Rehearing Denied Jan. 13, 1987.

Franklin A. Nachman (Martin Semple, with him on briefs) of Semple & Jackson, Denver, Colo., for petitioner.

William S. Rhyne, Asst. Counsel for Litigation (George R. Salem, Deputy Sol. of Labor, William H. DuRoss, III, Associate Sol. for Employment and Training, and Harry L. Sheinfeld, Counsel for Litigation, with him on brief), U.S. Dept. of Labor, Washington, D.C., for respondent.

Before McKAY and ANDERSON, Circuit Judges, and JOHNSON, District Judge *.

McKAY, Circuit Judge.

For a number of years, Adams County received funds from the Department of Labor under the Comprehensive Employment and Training Act (CETA). During the years 1975 to 1981, an employee of the County embezzled $301,922 from the CETA funds received by the County. Claiming that the County had misspent the funds,

* Honorable Alan B. Johnson, United States District Judge for the District of Wyoming, sitting

the Secretary of Labor sought to recover the $301,922 from the County. An administrative law judge (ALJ) granted the Secretary's motion for summary judgment and ordered the County to pay the Secretary $301,922. The ALJ's order became a final order of the Secretary which the County now asks this court to review. The County claims that the ALJ's decision is erroneous because: (1) the Secretary's action is barred by the 120–day rule of 29 U.S.C. § 816(b) (Supp. V 1981), (2) the County did not "misspend" the embezzled funds, and (3) the Secretary is estopped from recovering the funds. We reject the County's arguments and affirm the decision of the ALJ.

I.

■ Section 816(b), in relevant part, states:

Whenever the Secretary receives a complaint ... which alleges, or whenever the Secretary has reason to believe (because of an audit, report, on-site review, or otherwise) that a recipient of financial assistance under this chapter is failing to comply with the requirements of this chapter, the regulations under this chapter or the terms of the comprehensive employment and training plan, the Secretary shall investigate the matter. The Secretary shall conduct such investigation, and make [his] final determination ... not later than 120 days after receiving the complaint.

The County claims that since the Secretary did not act within the 120 days required by this section, he is barred from any recovery of the funds.

In *Brock v. Pierce County*, — U.S. ——, 106 S.Ct. 1834, 1842, 90 L.Ed.2d 248 (1986), the Supreme Court held that

CETA's requirement that the Secretary "shall" take action within 120 days does not, standing alone, divest the Secretary of jurisdiction to act after that time. There is simply no indication in the stat-

by designation.

ute or its legislative history that Congress intended to remove the Secretary's enforcement powers if he fails to issue a final determination on a complaint or audit within 120 days.

In *Brock,* the Secretary conducted an audit that raised questions concerning Pierce County's use of CETA funds. The Secretary investigated these questions but did not issue his final determination within 120 days after the audit. Consequently, Pierce County claimed that any further action by the Secretary was barred by the 120–day rule. The Court rejected Pierce County's argument and allowed the Secretary to recover the misspent funds.

In the present case, the County also argues that the Secretary did not make his final determination within 120 days after he received notice of the embezzlement. In March 1982, an independent accounting firm, during an audit, discovered the embezzlement, and immediately notified the County of its findings. The County told the Secretary that there was a possible embezzlement of CETA funds, and the Secretary began an independent investigation. After completing the investigation, the Secretary issued his final determination finding the County liable for the embezzled funds. Although the final determination was not issued until March 1983, we find no unreasonable delay in the Secretary's actions. In *Brock,* the Supreme Court allowed the Secretary to recover funds when the determination was issued more than two years after the complaint. Thus, the Secretary's action here is not barred by the 120–day rule, and the Secretary can recover the misspent funds from the County. This comports not only with *Brock,* but also with the general rule that agency action should not be set aside for delay. *See, e.g., Milwaukee County v. Donovan,* 771 F.2d 983, 989 (7th Cir.1985), *cert. denied,* — U.S. ——, 106 S.Ct. 2246, 90 L.Ed.2d 692 (1986), and cases cited therein.

## II.

The County also argues that it did not "misspend" the funds because the employ-ee embezzled the funds before the County could spend them. While it is true that under 29 U.S.C. § 816(d)(1) (Supp. V 1981) the Secretary can only recover "misspent" funds, the County's definition of "misspent" is too narrow. We agree with the Secretary's determination that the County "misspent" the funds.

When Congress enacted CETA, it required the Secretary to "establish such standards and procedures for recipients of funds ... as are necessary to assure against program abuses including ... the use of funds for activities which are not directly related to the proper operation of the program." 29 U.S.C. § 825(g) (Supp. V 1981). In response to this directive, the Secretary initially adopted the government-wide cost standards applicable to state and local governments, 29 C.F.R. § 98.12(a) (1982), and then added more detailed CETA cost provisions. *See* 20 C.F.R. §§ 676.40 & 676.40–1 (1982). These provisions explain exactly what costs are allowable under CETA.

 The responsibility of assuring that funds are spent according to the CETA regulations lies with the recipients of CETA funds. Indeed, the County, as a prime sponsor, is responsible to assure that the funds it receives are spent in accordance with the law. *Kentucky Department of Human Resources v. Donovan,* 704 F.2d 288, 293 (6th Cir.1983); *see also North Carolina Commission of Indian Affairs v. United States Department of Labor,* 725 F.2d 238, 242 (4th Cir.) (prime sponsor responsible to ensure that contractors and subgrantees adhere to CETA requirements), *cert. denied,* 469 U.S. 828, 105 S.Ct. 112, 83 L.Ed.2d 55 (1984). Funds not spent in accordance with CETA regulations are "misspent." No CETA regulation lists embezzlement as an allowable cost. Thus, we hold that the funds embezzled by an employee of the County were misspent by the County for purposes of section 816(d)(1). Consequently, the County is liable for those funds, and the Secretary can demand repayment.

## III.

Finally, the County argues that the Secretary is estopped from recovering any misspent funds because: (1) the Secretary audited the County's CETA records in 1976 and failed to discover the embezzlement, and (2) the Government, when it brought criminal charges against the employee who had embezzled the funds, did not require restitution as a condition to accepting a guilty plea. We find neither argument convincing.

In *Heckler v. Community Health Services*, 467 U.S. 51, 104 S.Ct. 2218, 81 L.Ed.2d 42 (1984), the Supreme Court was faced with a claim of estoppel against the Government. A non-profit corporation that provided health care services which were reimbursable under the Medicare program was also a CETA fund grantee. When the grantee first obtained CETA funds, and on many occasions thereafter, it asked a government agent whether salaries of CETA-funded employees were reimbursable under Medicare. The agent orally advised the grantee that the salaries of CETA–funded employees were reimbursable. However, the agent, contrary to accepted administrative practice, did not refer the inquiry to the Department of Health and Human Services. The grantee included the CETA-funded salaries as costs in its reimbursement reports. When the agency involved was informed of the practice, it sought to recover the amounts that represented CETA–funded salaries. The grantee claimed that the Government was estopped by the agent's representation.

The Supreme Court, in deciding whether the Government could be estopped, stated:

When the Government is unable to enforce the law because the conduct of its agents has given rise to an estoppel, the interest of the citizenry as a whole in obedience to the rule of law is undermined. It is for this reason that it is well settled that the Government may not be estopped on the same terms as any other litigant.

*Id.* at 60, 104 S.Ct. at 2224 (footnote omitted). The Court, however, refused to hold that the Government could not be estopped in any situation. Rather, it stated that "however heavy the burden might be when an estoppel is asserted against the Government, the private party surely cannot prevail without at least demonstrating that the traditional elements of an estoppel are present." *Id.* at 61, 104 S.Ct. at 2225. The Court then found that the grantee in *Heckler* had not demonstrated that the elements of an estoppel were present. Thus, the Government was not estopped from recovering the amounts that represented CETA-funded salaries.

Applying *Heckler* to the present case, we conclude that the County's claim must fail because it has not met even the threshold test of the traditional elements of an estoppel. This court has stated that those elements are:

(1) the party to be estopped must know the facts; (2) he must intend that his conduct will be acted upon or must so act that the party asserting the estoppel has the right to believe that it was so intended; (3) the latter must be ignorant of the true facts; and (4) he must rely on the former's conduct to his injury.

*Che-Li Shen v. Immigration & Naturalization Service*, 749 F.2d 1469, 1473 (10th Cir.1984) (quoting *Lurch v. United States*, 719 F.2d 333, 341 (10th Cir.1983), *cert. denied*, 466 U.S. 927, 104 S.Ct. 1710, 80 L.Ed.2d 182 (1984)).

■ The failure of the Secretary's audit to uncover the embezzlement scheme does not operate as an estoppel. The County is primarily responsible to ensure that funds are expended only for costs allowed under CETA. That responsibility cannot be shifted to the Secretary simply because the Secretary performs an audit, even if the audit is negligently performed. The Secretary's audit does not represent that either (1) all expenditures prior to the audit are approved, or (2) the County no longer bears the burden of ensuring that all expenditures are allowable under CETA. Thus, the County has not shown that it reasonably relied on any representation of the

Secretary that the Secretary accepted responsibility for the embezzlement.

 Similarly, the decision to accept a guilty plea without demanding restitution does not act as an estoppel against the Secretary. The Government must be allowed to enforce the law. We cannot require it to demand restitution in all embezzlement cases involving government funds in order to retain the right to proceed against the primary grantee. This is particularly true in the present case since the County has failed to show any detriment from the lack of restitution. The County actually brought suit against the employee and recovered $40,000—the extent of the employee's net worth. Requiring restitution would not have benefited the County in any way.

The County has failed to show any set of facts that would establish an estoppel against the Secretary. The ALJ was correct in granting summary judgment for the Secretary. The decision is affirmed.