**CITY OF FREDERICKSBURG, VA, Petitioner,**

v.

**FEDERAL ENERGY REGULATORY COMMISSION, Respondent.**

No. 88–3616.

United States Court of Appeals, Fourth Circuit.

Argued March 6, 1989.

Decided June 9, 1989.

James Morgan Pates, for petitioner.

Hanford O'Hara, Washington, D.C., (Catherine C. Cook, Gen. Counsel, Jerome M. Feit, Sol., Washington, D.C., on brief), for respondent.

Before MURNAGHAN, Circuit Judge, STAKER, District Judge for the Southern District of West Virginia, sitting by designation, and HOWARD, District Judge for the District of Maryland, sitting by designation.

MURNAGHAN, Circuit Judge:

Commonwealth Hydroelectric, Inc. ("CHI") applied for a license from the Federal Energy Regulatory Commission ("FERC") to build an electricity-generating powerhouse at the Embrey Dam on the Rappahannock River near Fredericksburg, Virginia. The City of Fredericksburg, which now owns the dam and derives its water supply from the dam's reservoir, intervened in the licensing proceedings to

oppose CHI's plans. Despite the objections, the acting director of FERC's Office of Hydropower Licensing ("acting director") issued the license to CHI in December 1987. 41 FERC (CCH) ¶ 62,309 (1987).

Fredericksburg appealed to FERC, which, except for a few modifications of the license, affirmed the acting director's order. 43 FERC (CCH) ¶ 61,300 (1988). After FERC denied Fredericksburg's request for rehearing, 44 FERC (CCH) ¶ 61,069 (1988), the city petitioned this Court for review.

We grant Fredericksburg's petition, and, for the reasons that follow, vacate the licensing order and remand to FERC.

## I.

Section 401(a) of the Clean Water Act, 33 U.S.C. § 1341(a), requires CHI, as a prospective licensee, to seek certification from the Commonwealth of Virginia indicating that the powerhouse project would comply with various water quality provisions of the Act. Virginia's denial of such certification precludes issuance of the license. *See* 33 U.S.C. § 1341(a)(1). FERC will waive the certification requirement if the state "fails or refuses to act on a request for certification" within one year of receiving the request. *Id;* 18 C.F.R. § 4.38(e)(2) (1988).

## A.

CHI sent a letter to the Virginia State Water Control Board ("SWCB") in July 1983 seeking water quality certification of the powerhouse project pursuant to Section 401(a)(1) of the Clean Water Act. In response to the letter, the SWCB sent CHI a "Joint Permit Application" which the state requires for those seeking certification. CHI never submitted the application, despite repeated warnings from SWCB that the state would not grant certification unless the application were completed. Mean-

while, FERC notified SWCB in April 1987 that it had 30 days to file recommendations regarding CHI's proposed project. The SWCB deemed itself unable to act within 30 days in the absence of an application from CHI, and therefore made no recommendation.

Having received no recommendation from the SWCB, FERC waived the Clean Water Act certification requirement on grounds that SWCB had not acted within one year of CHI's letter seeking certification. The City of Fredericksburg argues, however, that there was no valid waiver because CHI made no "request" for certification within the meaning of FERC's regulations, in light of the company's refusal to submit the application form required by the state.

Fredericksburg asserts that the CHI project could diminish water quality in the Rappahannock below the Embrey Dam. CHI's license requires the company to maintain a minimum water flow from the dam. However, Fredericksburg argues that such a flow rate may prove inadequate to supply the city's sewage treatment plant downstream while maintaining the quality of the river water.

## B.

▇ We conclude that CHI never made a "request" for certification within the meaning of FERC's regulations.[1] Those regulations require that a prospective licensee demonstrate its compliance with the state certification requirements of the Clean Water Act by filing with FERC either a copy of the certification or a "copy of the request for certification, including proof of the date that the certifying agency received the request *in accordance with applicable law governing filings with that agency.*" 18 C.F.R. § 4.38(c)(2) (1988) (emphasis added).[2] As we read the regulation, a valid request for certification occurs only if the prospective licensee complies with the state

---

1. We rest our holding solely on our reading of the FERC regulations and do not purport to decide the meaning of "request" under Section 401(a)(1) of the Clean Water Act, 33 U.S.C. § 1341(a)(1).

2. The identical regulation was in force when the acting director issued the license to CHI. *See* 18 C.F.R. § 4.38(c)(2)(ii) (1987).

agency's filing procedures. In Virginia, the SWCB requires those requesting certification to file a formal application. SWCB Procedural Rule No. 3, § 3.05 (1981). SWCB has statutory authority to promulgate the procedural rule to govern the certification process. *See* Va.Code Ann. § 62.1–44.15(7) (Supp.1988).

■■■ CHI's license is invalid because the acting director violated FERC's own regulations by issuing the license without CHI's having filed the Joint Permit Application which SWCB prescribed as the method of requesting water quality certification.[3] It is well-settled that an administrative agency, under most circumstances, must abide by its own regulations while those rules remain in force. *See EEOC v. Shell Oil Co.,* 466 U.S. 54, 67, 104 S.Ct. 1621, 1630, 80 L.Ed.2d 41 (1984); *United States v. Nixon,* 418 U.S. 683, 695–96, 94 S.Ct. 3090, 3100–01, 41 L.Ed.2d 1039 (1974); *Morton v. Ruiz,* 415 U.S. 199, 235, 94 S.Ct. 1055, 1074, 39 L.Ed.2d 270 (1974).

We disagree with FERC's contention that our decision in *Onslow County v. Dep't of Labor,* 774 F.2d 607, 611 (4th Cir.1985), compels a different result. *Onslow County* merely applied the rule of *American Farm Lines v. Black Ball Freight Service,* 397 U.S. 532, 90 S.Ct. 1288, 25 L.Ed.2d 547 (1970), in which the Supreme Court recognized a limited exception to the rule that an agency's action taken in violation of its own regulations is void. *American Farm Lines* held that an administrative agency has discretion to relax or modify internal housekeeping regulations that serve as "mere aids to the exercise of the agency's independent dis-

cretion," as long as the complaining party has not suffered "substantial prejudice". 397 U.S. at 539, 90 S.Ct. at 1292. However, the exception announced in *American Farm Lines* does not apply if the agency regulations were intended "to confer important procedural benefits upon individuals" or other third parties outside the agency. *Id.* at 538, 90 S.Ct. at 1292. *Accord Port of Jacksonville Maritime Ad Hoc Comm., Inc. v. United States Coast Guard,* 788 F.2d 705, 708 (11th Cir.1986). The applicability *vel non* of *American Farm Lines* thus turns on whether the regulation at 18 C.F.R. § 4.38(c)(2) was designed to aid FERC or, instead, to benefit outside parties.

The regulation requiring that water quality certification requests be made in compliance with state law clearly is designed to confer a benefit upon the states, and by extension, their political subdivisions, including the City of Fredericksburg. Such an interpretation of 18 C.F.R. § 4.38(c)(2) comports with the Clean Water Act's deference to the states in the water quality certification process. *See* 33 U.S.C. § 1341(a)(1) (state denial of certification request precludes issuance of license). The regulation benefits the states by discouraging prospective licensees from thwarting state administrative procedures. More importantly, by allowing states to prescribe the method of filing certification requests, the regulation also aids states in obtaining the information necessary to act on requests from prospective licensees.

The regulation at issue here stands in sharp contrast to the administrative rule in *Onslow County,* a case which FERC in-

---

**3.** FERC argues that our reading of 18 C.F.R. § 4.38(c)(2) amounts to a resurrection of the doctrine of *Washington County Hydro Development Associates,* 28 FERC (CCH) ¶ 61,341 (1984), which § 4.38(c)(2) was expressly designed to overrule. *See* 52 Fed.Reg. 5446, 5446–47 (1987). We disagree. *Washington County* had held that the one-year waiver period referred to in Section 401(a)(1) of the Clean Water Act would commence "on the date a state agency deems an application *acceptable for processing.*" 28 FERC ¶ 61,341 (CCH) at 61,624 (emphasis added). Fredericksburg has not argued, and we do not hold, that the one-year waiver period would begin only after the SWCB

deemed CHI's Joint Permit Application ready for processing. Instead, we hold that the waiver period would have commenced upon the *filing* of that application in the manner specified by the SWCB. FERC has failed to suggest any other plausible reading of § 4.38(c)(2) in light of the facts presented here. Were we to hold that CHI had made a "request" under § 4.38(c)(2), we would be reading out of the regulation the phrase "in accordance with applicable law governing filings with that agency." That we refuse to do. Our task is to render an interpretation that gives effect to all words of the regulation.

sists is dispositive. That case involved a regulation requiring the Secretary of Labor to perform an audit of each CETA program [4] within two years of its initiation. We concluded that the audit rule was intended primarily "to aid the Secretary in insuring the integrity of the CETA program." *Onslow County*, 774 F.2d at 611 (footnote omitted). The regulation's primary purpose was not "to confer important procedural benefits on recipients" of CETA funds. *Id.* at n. 5. By contrast, the FERC regulation in the present case was designed to benefit parties outside of the federal agency itself.

In sum, FERC's failure to comply with its own regulation renders invalid the licensing of CHI. We reject FERC's suggestion that it cured the deficiency by giving SWCB 30 days to file recommendations on CHI's application after FERC learned of the company's failure to obtain certification. One month is an inadequate substitute for the one-year period provided to Virginia under the FERC regulations, especially when CHI had failed to complete the very application which would have provided SWCB with valuable information about the proposed hydroelectric project. We therefore vacate the license, without prejudice to CHI to reapply to FERC after properly seeking a water quality certification from the Commonwealth of Virginia.

## II.

In light of our disposition of the case, we need not decide the remaining issues raised by the City of Fredericksburg. Our vacating the licensing order renders moot the question whether Fredericksburg suffered prejudice as a result of CHI's failure to serve the city with various documents as required by 18 C.F.R. § 385.2010(e)(1) (1988). If CHI reapplies for a license, FERC should enforce its regulations requiring service of documents on all intervenors in the licensing proceedings, including the City of Fredericksburg. We also decline to address Fredericksburg's sub-

stantive challenges to Article 414(c) of the license, which would have permitted CHI to grant easements and rights-of-way to third parties to extract up to 1 million gallons of water per day from the Embrey Dam reservoir. Since we do not know whether the same provision will appear in any future license that CHI might obtain from FERC, our resolution of the issue at the present time would amount to nothing more than an advisory opinion, which we have no authority to render. *See* U.S. Const. art. III, § 2; *United Public Workers v. Mitchell,* 330 U.S. 75, 89, 67 S.Ct. 556, 564, 91 L.Ed. 754 (1947); *Jackson v. Jackson,* 857 F.2d 951, 955 n. 1 (4th Cir.1988).

## III.

In conclusion, the issuance of the license is void because CHI failed to make a valid request for a water quality certification from the Commonwealth of Virginia. We vacate the license and remand the case to FERC to allow CHI to reapply for licensing after properly requesting water quality certification from the Commonwealth of Virginia.

**VACATED AND REMANDED.**

---

**4.** A program authorized by the Comprehensive Employment Training Act, 29 U.S.C. § 801 *et* *seq.* (Supp. II 1978) (repealed 1982).