**In the Matter of CITY OF ST. LOUIS, MISSOURI, Petitioner,**

v.

**UNITED STATES DEPARTMENT OF LABOR, Respondent.**

**No. 85–1260.**

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 16, 1985.

Decided March 24, 1986.

Rehearing Denied May 14, 1986.

David P. Weiss, St. Louis, Mo., for petitioner.

Marcia A. Lurensky, Washington, D.C., for respondent.

Before BOWMAN, Circuit Judge, BRIGHT, Senior Circuit Judge, and WOLLMAN, Circuit Judge.

BRIGHT, Senior Circuit Judge.

The City of St. Louis (City) brings this petition for review of a Department of Labor (Department) order that required it to repay $715,210.48 in costs disallowed under the Comprehensive Employment Training Act of 1973, Pub.L. No. 93–203, §§ 1 *et seq.*, 87 Stat. 839 (1974), amended by CETA Amendments of 1978, Pub.L. No. 95–524, §§ 1 *et seq.*, 92 Stat. 1909 (1978) (repealed 1982) (CETA or the Act).[1] Essentially, the City argues that the decision violates the City's right to due process, rests upon erroneous conclusions of law, and is unsupported by substantial evidence. The City also contends that the Secretary lacked jurisdiction as to part of the order. We affirm.

## I. BACKGROUND.

Between July of 1974 and October of 1979, the Department awarded the City twenty-four CETA grants with budgeted amounts totaling $108,629,184. In 1981, the Department conducted and completed an audit of the City's grants for the period covering April 1, 1978 through September 30, 1980. This audit, dated November 10, 1981, recommended the disallowance of certain City expenditures which failed to comply with the Act and/or the regulations. After the failure of informal settlement procedures, a Department Grant Officer issued a final determination on May 7, 1982, disallowing many of the City's expenditures, and requiring the City to repay the misspent funds.

The City appealed the Grant Officer's decision to an Administrative Law Judge (ALJ). The parties executed a joint stipula-

tion which provided for submission to the ALJ of documentary evidence and summaries of testimony which would have been offered in a hearing. Based on this record, the ALJ ordered the City to repay $715,210.48 to the Department. The disallowed costs at issue herein are:

ALJ Finding 1A—Requiring Repayment of $48,878.28, which the City paid to ineligible CETA participants;

ALJ Finding 1B—Requiring Repayment of $187,081.30, in unsubstantiated expenditures of the City's subgrantees;

ALJ Finding 3—Requiring Repayment of $95,031.91, paid to subcontractors hired by "sole source procurement"; and

ALJ Finding 5—Requiring Repayment of $384,220.00, paid to participants hired without regard to Merit System Principles.

The City petitioned the Secretary for review of the ALJ's decision. Because the Secretary did not act on that decision, the ALJ's decision became the final decision of the Secretary pursuant to 20 C.F.R. § 676.-91(f). The City then petitioned this court for review of the decision under 29 U.S.C. § 817(a) (1978).

## II. DISCUSSION.

Our standard of review of an agency decision is the substantial evidence test. *Erickson Transportation Corp. v. ICC*, 728 F.2d 1057, 1062–63 (8th Cir.1984). In addition, this court and the courts of other circuits have construed section 602(b) of the 1973 Act, 29 U.S.C. § 982(b) (1976), as authorizing the Secretary to recover misspent funds.[2] *Texarkana Metropolitan Area Manpower Consortium v. Donovan*, 721 F.2d 1162 (8th Cir.1983) (per curiam); *North Carolina Commission of Indian Affairs v. United States Department of Labor*, 725 F.2d 238, 240–42 (4th Cir.), *cert. denied*, — U.S. —, 105 S.Ct. 112, 83 L.Ed.2d 55 (1984); *Atlantic County, New*

---

1. CETA has been replaced by the Job Training Partnership Act, 29 U.S.C. §§ 1501, *et seq.*, but pending cases continue to be adjudicated under CETA. 29 U.S.C. § 1591(e) (1982).

2. Section 106(d)(1) of the 1978 Amendments to the Act expressly provides for a right of repayment of misspent funds. 29 U.S.C. § 816(d)(1) (1978).

*Jersey v. United States Department of Labor,* 715 F.2d 834, 835–37 (3d Cir.1983) (per curiam).

## A. Claim of Due Process Violation.

The City asserts that it was never informed of the specific CETA provisions or regulations which prohibit either payments to ineligible participants or undocumented expenditures due to lost or misplaced files of participants. The City contends that it was thereby deprived of the due process right to notice of prohibited conduct prior to being penalized for alleged transgression. We disagree.

■ In his opinion, the ALJ noted that: The record, worked out by the parties, does not contain the details of the programs covered thereby or the texts of the grants. It can be inferred from the Audit Report * * * and from certain aspects of the controversy * * * that the grants must have contained the customary and usual General Assurances which obligate a CETA grantee to abide by the Act and present and further regulations issued thereunder * * *.

(ALJ Op. at 2). On appeal, the City did not contest this conclusion. 29 U.S.C. § 835(a)(1) (1978) clearly provides that "[e]very recipient of funds * * * shall make, keep, and preserve such records as the Secretary shall require with regard to each employee and each participant." The applicable regulations further require prime sponsors to "ensure that contractors and subrecipients maintain and make available for review * * * all records pertaining to the operations of programs * * * consistent with the maintenance and retention of record requirements." 20 C.F.R. § 676.-37(a)(3). These provisions clearly require complete documentation concerning CETA participants. Further, in the stipulation to the ALJ, the City conceded that it did not properly maintain its filing system under the CETA grant. In light of the express provisions of the Act and regulation, and the City's concession, we reject the City's contention that it received inadequate notice of its recordkeeping responsibilities.

■ We also note that in the stipulated record the City appears to concede that it must repay the disallowed costs based on monies paid to ineligible participants. Furthermore, the City sought from the ALJ a waiver of part of this non-eligibility disallowance based on lost files.[3] Thus, we conclude that the City received adequate notice that the Act prohibited payment to non-eligible participants. As such, we believe that no violation of the City's due process right to notice occurred.

■ Moreover, in failing to comply with the recordkeeping and eligibility requirements of CETA and its regulations, the City "misspent" federal funds within the meaning of the statute. *Montgomery County, Maryland v. Department of Labor,* 757 F.2d 1510, 1513 (4th Cir.1985) (citation omitted). Because the City offered no evidence to demonstrate the eligibility of these participants or to substantiate these expenditures, the Secretary properly disallowed these costs.

## B. City Responsibility for Disallowed Costs of Subgrantees.

■ The City contends that the Secretary offered no legal basis for holding the City liable for disallowances based on the failure of subgrantees to maintain proper records. In support of this contention, the City cites the Department's decision in *Davis v. Youth Community Enterprises,* 81–CET–234 (DOL 1982). In *Davis,* the ALJ determined that a prime sponsor was not liable for an award of backpay based on a subgrantee's discriminatory discharge of a CETA employee. However, in *Davis,* the

---

3. The ALJ and the Secretary rejected the City's suggestion for determining this disallowance by applying the ratio of eligible CETA workers, based on found files, against the unsubstantiated expenditures due to lost files. The City contends that the ALJ abdicated his responsibility for reasoned decisionmaking on this issue because the ALJ stated that he agreed with the grant officer that this was not a workable suggestion. The City's contention lacks merit inasmuch as the Act requires the ALJ and the Secretary to base decisions on substantial evidence rather than on speculative mathematical calculations. 29 U.S.C. § 817(b) (1978).

discriminatory discharge violated the subgrantee's own personnel policies as well as the CETA requirement.

In the instant case, some of the City's subgrantees failed to maintain proper records pertaining to the operations of the CETA program. Unlike the situation in *Davis*, here the subgrantees merely lost or misplaced participant personnel files. As previously noted, the Act and the regulations require prime sponsors to ensure proper recordkeeping by subgrantees. 29 U.S.C. § 835(a)(1); 20 C.F.R. § 676.37(a)(3). The regulations further provide that a prime sponsor is responsible for the operation of all its subgrants and for assuring adherence by subgrantees to the requirements of the Act, regulations and other applicable law. 29 C.F.R. § 98.27(d). Because the Act clearly makes the prime sponsor responsible for the operation of its subgrants, we conclude that the Secretary properly held the City financially liable for these disallowed costs.

### C. Ambiguity of Requirement to Formally Advertise for Subcontractors.

The City asserts that the Secretary erred in disallowing the costs of two subcontracts procured through "sole source" contracting. The City contends that the applicable regulations are 20 C.F.R. §§ 676.23 and 676.37, and that it interpreted these regulations as requiring prime sponsors merely to have an objective basis for the selection of subcontractors. In addition, the City argues that the paragraph in OMB Circular No. A–102 Revised, Attachment O,[4] requiring formal advertising or competitive procurement did not exist when the City entered the subcontracts in issue.

■ The record indicates that the parties stipulated to the ALJ that OMB Circular No. A–102 was one of the regulations governing this issue. OMB Circular No. A–102 clearly requires each grantee to establish procurement procedures which provide for formal advertising unless such advertising is impracticable or unfeasible. In its present form, OMB Circular No. A–102 applied on and after September 12, 1977. Because the grants in question cover the period from April of 1978 through September of 1980, the City's contention that this provision did not exist lacks merit.

■ We also reject the City's contention that 20 C.F.R. §§ 676.23 and 676.37 contain ambiguities which support the City's decision to dispense with formal advertising in procuring some subcontractors. As the ALJ noted, these regulations address the qualifications of service deliverers and do not authorize sole source procurement.[5]

■ In the alternative, the City argues that both subcontracts fall within an exception to competitive procurement contained in OMB Circular No. A–102. This exception allows prime sponsors to forego com-

---

**4.** OMB Circular No. A–102 Revised, Attachment O, section 3(c) provides in pertinent part:

3

\*     \*     \*     \*     \*     \*

(c) The grantee shall establish procurement procedures which provide for, as a minimum, the following procedural requirements:

\*     \*     \*     \*     \*     \*

(5) Formal advertising, with adequate purchase description, sealed bids, and public openings shall be the required method of procurement unless negotiation pursuant to paragraph (6) below is necessary to accomplish sound procurement. \* \* \*

(6) Procurements may be negotiated if it is impracticable and unfeasible to use formal advertising.

**5.** For example, 20 C.F.R. § 676.23(c)(2)(iv) provides:

In the selection of service deliverers, the prime sponsor shall give special consideration to the CBO's of demonstrated effectiveness in the delivery of employment and training services. For example, in competitive procurement procedures, the prime sponsor may afford special consideration through additional points in a rating system.

Further, 20 C.F.R. § 676.37 provides, in part:

(d) Small and minority-owned businesses, including small businesses owned by women, within the jurisdiction of the prime sponsor and to the extent necessary to those in other parts of the labor market area, shall be provided maximum reasonable opportunity to compete for contracts for supplies and services.

\*     \*     \*     \*     \*     \*

(f) Selection of deliverers shall be in accordance with § 676.23.

petitive bidding where it is impracticable or unfeasible. With regard to one of the subcontracts in issue (that with the Urban League), the City failed to demonstrate that competitive procurement was not feasible or practicable. In 1979, the City asked the Department to allow a subcontract with the Urban League for payroll services without competition. Although the City never received an answer to this inquiry, it entered the subcontract without competition. We agree with the ALJ's conclusion that the lack of a response did not entitle the City to circumvent the requirements of competitive bidding. As to the other subcontract in issue (that with Citizens For Community Development), the City failed to raise this argument before the ALJ and offered no reasons why competitive procurement was not possible. Accordingly, we conclude that the exception did not apply to the subcontracts and that the Secretary properly disallowed these expenditures.

### D. Merit Staffing Violations.

█ The City asserts that the Secretary erred in disallowing costs due to the City's violation of Merit Staffing Principles. The City contends that a 1979 audit referred only to the "apparent" circumvention of Merit Staffing Principles, and that genuine confusion existed as to whether the City's practices, in fact, violated these principles. Further, the City submits that because a later audit, dated December 15, 1980, stated that only future violations of this sort would result in disallowances, the Department should be barred from disallowing these costs.

29 C.F.R. § 98.14 provides in part that "[e]ach prime sponsor * * * shall assure

that it will maintain personnel policies and practices for its employees in accord with state and local laws and regulations that adequately reflect the merit principles declared in the Intergovernmental Personnel Act (IPA) of 1970 (Pub.L. 91–648)." This regulation has been in effect and unchanged since May of 1975. *See* 40 Fed. Reg. 22712. The record demonstrates that although the City may have been confused initially, the Department advised the City of this violation and recommended an end to these practices in 1977. The record also shows that the Department never "approved" the City's violation of Merit Staffing Principles. In late 1978, the City took steps to rectify the alleged violations. In light of the clear language of the regulation and the facts of this case, we believe that the Secretary properly disallowed these costs.

### E. Jurisdictional Bar.

With regard to the previously discussed disallowances based on (1) sole source procurement, and (2) failure to abide by Merit System Staffing Principles, the City asserts that the Secretary lacked jurisdiction[6] to impose sanctions because section 106(b) of CETA Amendments of 1978, 29 U.S.C. § 816(b) (1978), requires a "final determination" of problems to be issued within 120 days of the time the Secretary became aware of a possible CETA violation.[7] Section 106(b) provides in relevant part:

INVESTIGATION OF COMPLAINTS BY SECRETARY.

Whenever the Secretary receives a complaint from any interested person or organization * * * which alleges, or whenever the Secretary has reason to believe (because of an audit, report, on-

---

6. The Department asserts that the City failed to raise this issue in the administrative hearing. Accordingly, the City cannot raise it for the first time on appeal. *Pierce County v. United States Department of Labor*, 699 F.2d 1001, 1005 (9th Cir.1983). However, because the question presented is purely a matter of law, we will address it.

7. We note that the Secretary promulgated a regulation to implement the authority conferred by

Congress in section 106(b). 20 C.F.R. § 676.-88(e) provides in pertinent part:

(e) *Final determination.* [T]he Grant Officer shall, not later than 120 days after the filing of a complaint (or receipt of a final audit or investigation report in the absence of a complaint), provide each party with a final written notice * * * that * * * lists any sanctions, and required corrective actions * * *.

site review, or otherwise) that a recipient of financial assistance under this chapter is failing to comply with the requirements of this chapter, the regulations under this chapter or the terms of the comprehensive employment and training plan, the Secretary shall investigate the matter. The Secretary shall conduct such investigation, and make the final determination required * * * regarding the truth of the allegation or belief involved, not later than 120 days after receiving the complaint.

The City submits that the Secretary knew that it entered two subcontracts without competitive bidding when the Department approved the City's annual plans in 1979 and in 1980. In addition, the Secretary received an audit and a GAO report in early 1979 which indicated that the City was circumventing Civil Service Merit System Principles. The Department's initial determination of these issues is dated February 4, 1982, and the Third Amended Final Determination is dated May 7, 1982. As such, the Secretary rendered the final determination well beyond the 120 day period. The City contends that the Secretary's failure to act upon the awareness of these violations within the 120 day limit of section 106 deprived him of jurisdiction to recover the misspent funds.

In support of this contention, the City relies on *Lehigh Valley Manpower Program v. Donovan,* 718 F.2d 99 (3d Cir. 1983) and *City of Edmonds v. United States Department of Labor,* 749 F.2d 1419 (9th Cir.1984). In these cases, the Third and Ninth Circuits concluded that under section 106(b), the Secretary has no authority to seek repayment more than 120 days after learning of a possible CETA violation.[8]

However, we note that two other circuits have reached the opposite conclusion on this issue. In *St. Regis Mohawk Tribe v. Brock,* 769 F.2d 37 (2d Cir.1985) and *Milwaukee County v. Donovan,* 771 F.2d 983 (7th Cir.1985), the Second and Seventh Circuits determined that the 120 day limitation of section 106 is not jurisdictional.[9] In *St. Regis Mohawk Tribe,* the Second Circuit observed that "[a]lthough § 106(b) states that the Secretary 'shall' issue his final determination within 120 days, it does not specify the consequence of his failure to do so." 769 F.2d at 41. To interpret the statutory language, the Second Circuit employed the principle that unless a statute provides both a time period for action as well as a consequence for non-action, the time period will not be deemed to be mandatory. *Id.* at 41 (citations omitted). Further, the Second Circuit determined that public policy requires that the public interest in recouping misspent CETA funds cannot be forfeited by the negligence of the Secretary or any government agent. *Id.* at 41–42. The conclusion that section 106 is not jurisdictional is further supported by the Seventh Circuit's reliance on the general rule that agency action should not be set aside for delay. *Milwaukee County, supra,* 771 F.2d at 989 (citations omitted).

In addition, both the Second and Seventh Circuits note that the 1978 CETA Amendments, which included this provision in section 106(b), were remedial in nature. The legislative history of these amendments demonstrates that Congress "intended to give the Secretary greater power to prevent and correct the fraud and abuse that had developed in CETA programs." *Id.* at 986 (citations omitted). As such, in interpreting section 106(b) the Seventh Circuit employed a presumption in favor of the Secretary's jurisdiction.

---

**8.** We note that the Ninth Circuit reached this same conclusion in *Pierce County v. United States Department of Labor,* 759 F.2d 1398 (9th Cir.), *cert. granted,* —— U.S. ——, 106 S.Ct. 308, 88 L.Ed.2d 285 (1985). The Supreme Court has granted certiorari on the question of whether the Secretary forfeits the right to recoup misspent CETA funds by failing to press for repayment within this 120 day limit.

**9.** Relying on its analysis in *Milwaukee County, supra,* the Seventh Circuit reached the same conclusion in *Illinois Migrant Council v. United States Department of Labor,* 773 F.2d 180, 182 (7th Cir.1985).

More specifically, the legislative history of the 1978 amendments demonstrates that the "primary purpose of the deadline [in section 106(b)] was to ensure an expeditious remedy for CETA program *beneficiaries* who had been denied CETA benefits due to misuse of funds by prime sponsors, and that one House of Congress stipulated that the deadline should not affect the Secretary's jurisdiction." *St. Regis Mohawk Tribe, supra,* 769 F.2d at 46 (footnote omitted). Paradoxically, if section 106 is construed as jurisdictional, the limit operates *against* CETA beneficiaries by destroying their claim if the Secretary fails to act expeditiously. *Milwaukee County, supra,* 771 F.2d at 989. We agree with the thorough and well-reasoned analysis of these decisions in the Second and Seventh Circuits. Accordingly, we conclude that section 106(b) is not jurisdictional and hold that the Secretary had jurisdiction to recover these misspent funds.

### F. Equities.

Finally, the City contends that this court should remand this action to the ALJ for consideration of the equities of the situation. The City submits that at all times it acted in good faith. Moreover, the City asserts that to penalize it for the transgressions of its subgrantees would work a considerable hardship on the City.

As previously noted, the legislative history of the 1978 amendments to the Act demonstrate that Congress intended to give the Department broad power to enforce the Act once it determined a violation has occurred. *See Illinois Migrant Council v. United States Department of Labor,* 773 F.2d 180, 183 (7th Cir.1985). As such, the Secretary is not required to consider the equities of the situation; rather he must determine whether violations have occurred, and if so, he must impose sanctions. Because the decision of the Secretary contains no error of fact or law and rests on substantial evidence, we affirm the Secretary's decision. Affirmed.