BROCK, SECRETARY OF LABOR *v.* PIERCE COUNTY

No. 85–385.   Argued April 1, 1986—Decided May 19, 1986

254

MARSHALL, J., delivered the opinion for a unanimous Court.

*Andrew J. Pincus* argued the cause for petitioner. With him on the briefs were *Solicitor General Fried, Deputy Solicitor General Geller, Allen H. Feldman, Mary-Helen Mautner,* and *Steven J. Mandel.*

*Joseph F. Quinn* argued the cause for respondent. With him on the brief was *William H. Griffies.**

JUSTICE MARSHALL delivered the opinion of the Court.

Section 106(b) of the Comprehensive Employment and Training Act (CETA), 92 Stat. 1926, 29 U. S. C. § 816(b) (1976 ed., Supp. V), provides that the Secretary of Labor

---

*Briefs of *amici curiae* urging affirmance were filed for the St. Regis Mohawk Tribe by *Jeanne S. Whiteing;* for the county of Oakland by *Charles G. Preston;* for the city of Detroit by *David H. Fink* and *Martin A. Scott;* for the city of Chicago by *James D. Montgomery, Mary K. Rochford,* and *Maureen Jeannette Kelly;* and for the National Association of Counties et al. by *Benna Ruth Solomon, Joyce Holmes Benjamin,* and *James L. Feldesman.*

(Secretary) "shall" issue a final determination as to the misuse of CETA funds by a grant recipient within 120 days after receiving a complaint alleging such misuse. The question presented in this case is whether the Secretary loses the power to recover misused CETA funds after that 120-day period has expired.

I

Before its repeal in 1982,[1] CETA provided for grants of federal funds to certain qualified entities known as "prime sponsors," principally state and local governments, for programs "provid[ing] job training and employment opportunities for economically disadvantaged, unemployed, or underemployed persons," 29 U. S. C. § 801 (1976 ed., Supp. V).[2] The statute contains detailed requirements concerning the operation of a CETA program and the training, pay, and terms of employment of participants in a program, see §§ 823–827. A prime sponsor must submit to the Secretary a plan detailing the operation of the proposed program and containing assurances that the program will comply with the statute and with the Secretary's regulations, § 813.

CETA grants the Secretary broad authority to ensure that CETA funds are used in accordance with the statute and regulations. The Secretary may audit a grant recipient, and in connection with such an audit may inspect records, question employees, and enter any premises upon which the program is conducted. § 835(a)(2). Any interested person, such as a participating employee, may file a complaint with the Secretary alleging that a grant recipient is failing to comply with the applicable standards. § 816.

Section 106(b), 29 U. S. C. § 816(b), which is the provision at issue in this lawsuit, requires that whenever the Secretary

---

[1] Effective October 13, 1982, CETA was replaced by the Job Training Partnership Act, Pub. L. 97–300, 96 Stat. 1324 (now codified at 29 U. S. C. § 1501 et seq. (1982 ed., and Supp. II)).

[2] Hereafter all citations to Title 29 of the United States Code will be to Supplement V of the 1976 edition, unless otherwise specified.

has reason to believe, through a complaint, an audit, or otherwise, that any grant recipient is misusing CETA funds or violating any statutory or regulatory standards, the Secretary "shall investigate the matter."[3]   The same section goes on to require that the Secretary "shall" determine "the truth of the allegation or belief involved, not later than 120 days after receiving the complaint."

## II

Respondent is a county in the State of Washington that received CETA funds from 1974 through 1977 pursuant to two separate grants.   On September 19, 1978, the Labor Department's Office of Special Investigations filed an audit report concerning respondent's first grant.   That Department's Grant Officer issued a final determination on February 13, 1981, disallowing approximately $110,000 in costs incurred by respondent on the grounds that those costs related to employees who were not eligible to participate in a CETA program.   On December 11, 1978, the Department's Office of the Inspector General filed an audit report with respect to the second grant, again raising questions concerning ineligi-

---

[3] The Secretary has promulgated regulations implementing § 106(b). See 20 CFR §§ 676.86, 676.88 (1982).   Those regulations provide that a Labor Department Grant Officer shall receive the complaint or audit report and conduct the investigation.   §§ 676.86(c), (d), (e).   The Grant Officer then makes an initial determination of the truth of the allegation or belief, § 676.88(a).   The Grant Officer must provide the recipient with an opportunity to resolve informally the matters contained in the initial determination, § 676.88(d), and if such informal resolution fails, the Grant Officer issues a final determination, § 676.88(e).

The regulations provide that the Grant Officer's final determination shall be the "final determination" required of the Secretary by § 106(b), even though that determination is subject to further review by an administrative law judge and the Secretary.   § 676.86(a).   Respondent does not contest the Secretary's interpretation of § 106(b)'s "final determination" requirement.   In the present case both the Grant Officer's final determination and the Secretary's final action took place after the 120-day deadline had expired.

ble participants. On April 22, 1981, the Grant Officer issued a final determination which he corrected on May 22, 1981, finally disallowing $373,000 in costs arising out of the second grant.

Respondent sought review of both final determinations before an Administrative Law Judge (ALJ) of the Labor Department. The ALJ disallowed the smaller sums of $108,000 and $265,000, respectively, in the two cases. In both cases, respondent argued that the Secretary could not order respondent to repay these sums because the Grant Officer's final determination had been issued considerably more than 120 days after submission of the initial audit report. While conceding that the Secretary did not lose jurisdiction to make a determination after 120 days had passed, respondent argued that it had suffered prejudice because of the lengthy delay. The ALJ rejected this claim in both cases, finding no specific instances of prejudice.

The Court of Appeals for the Ninth Circuit reversed. *Pierce County* v. *United States, By and Through Dept. of Labor*, 759 F. 2d 1398 (1985). That court had previously decided, in *City of Edmonds* v. *United States Dept. of Labor*, 749 F. 2d 1419 (1985), that Congress, in enacting § 106(b), had intended to prevent the Secretary from acting on a complaint unless the Secretary's final determination was issued within 120 days from his receipt of the complaint. In the present case, the Court of Appeals decided that the statutory command to the Secretary to issue a final determination "not later than 120 days after receiving the complaint" also required the Secretary to make a determination within 120 days when the allegation or belief is a result of the Secretary's own audit rather than a third-party complaint.[4] This

---

[4] Because § 106(b) states that the deadline for the Secretary's final determination is "120 days after receiving the complaint," the Secretary argued before the Ninth Circuit that the deadline applies only to investigations triggered by third-party complaints, and not those triggered by the Secretary's own audit. This reading, in the Secretary's view, also com-

decision conflicts with decisions of the Second, Seventh, and Eighth Circuits.[5] We granted certiorari to resolve the conflict, 474 U. S. 944 (1985), and we now reverse.

## III

As Judge Friendly noted in a case raising the identical issue, the proposition that Congress intended the Secretary to lose the authority to recover misspent funds 120 days after learning of the misuse "is not, to say the least, of the sort that commands instant assent." *St. Regis Mohawk Tribe, New York* v. *Brock*, 769 F. 2d 37, 41 (CA2 1985) (footnote omitted), cert. pending, No. 85–949. We must therefore examine carefully the statutory language and legislative history to determine whether Congress did indeed desire this somewhat incongruous result.

### A

The Ninth Circuit held that the plain meaning of the statutory command that the Secretary "shall" take action within 120 days was sufficient to demonstrate that Congress meant to bar further action after that period had expired. *City of Edmonds*, 749 F. 2d, at 1421. Noting that "[s]tatutory language is generally construed according to the plain meaning of the words used by Congress 'absent a clearly expressed

---

ports with the statutory purpose of protecting program participants and other interested parties who may be injured by a prime sponsor's misuse of funds. The Ninth Circuit rejected this argument, in part because the Secretary's own regulations establish a 120-day deadline for issuing determinations after an internal audit, see 20 CFR § 676.88(e) (1982). While the Secretary contends that those regulations simply constitute a self-imposed deadline, he does not challenge this aspect of the Ninth Circuit's decision. We therefore assume without deciding that the 120-day deadline was intended to apply to audit investigations.

[5] *St. Regis Mohawk Tribe, New York* v. *Brock*, 769 F. 2d 37 (CA2 1985), cert. pending, No. 85–949; *Milwaukee County* v. *Donovan*, 771 F. 2d 983 (CA7 1985), cert. pending, No. 85–1109; *City of St. Louis* v. *United States Dept. of Labor*, 787 F. 2d 342 (CA8 1986); but see *Lehigh Valley Manpower Program* v. *Donovan*, 718 F. 2d 99 (CA3 1983) (failure to comply with 120-day provision bars recovery of misspent funds).

legislative intention to the contrary,'" *ibid.* (quoting *Con-sumer Product Safety Comm'n* v. *GTE Sylvania, Inc.*, 447 U. S. 102, 108 (1980)), and finding no such contrary legislative intent, the Ninth Circuit held that the 120-day limit was jurisdictional.

The Secretary, however, notes that while § 106(b) speaks in mandatory language, it nowhere specifies the consequences of a failure to make a final determination within 120 days. The Secretary relies on a line of precedent in the Courts of Appeals to the effect that Government agencies do not lose jurisdiction for failure to comply with statutory time limits unless the statute "*'both* expressly requires an agency or public official to act within a particular time period *and* specifies a consequence for failure to comply with the provision.'" *St. Regis Mohawk Tribe, supra,* at 41 (quoting *Fort Worth National Corp.* v. *Federal Savings & Loan Ins. Corp.*, 469 F. 2d 47, 58 (CA5 1972)).[6] Having specified no consequences for the failure to make the determination required by § 106(b) within 120 days, the Secretary argues, the courts should not impute to Congress the desire to remedy such a failure by preventing the Secretary from protecting both the public fisc and the integrity of a Government program.

This Court has never expressly adopted the Circuit precedent upon which the Secretary relies. However, our

---

[6] See also *National Cable Television Assn., Inc.* v. *Copyright Royalty Tribunal*, 233 U. S. App. D. C. 44, 57, n. 23, 724 F. 2d 176, 189, n. 23 (1983) (requirement in 17 U. S. C. § 804(e) that tribunal "shall" render decision within one year does not make later decision void); *Marshall* v. *N. L. Industries, Inc.*, 618 F. 2d 1220, 1224–1225 (CA7 1980) (failure to meet requirement in 29 U. S. C. § 660(c)(3) that Secretary of Labor "shall" make determination on employee's complaint within 90 days does not bar subsequent enforcement action); *Marshall* v. *Local Union 1374, Int'l Assn. of Machinists and Aerospace Workers, AFL–CIO*, 558 F. 2d 1354 (CA9 1977) (requirement of 29 U. S. C. § 482(b) that Secretary of Labor "shall" bring suit within 60 days of receiving complaint does not bar later suit).

decisions supply at least the underpinnings of those precedents. This Court has frequently articulated the "great principle of public policy, applicable to all governments alike, which forbids that the public interests should be prejudiced by the negligence of the officers or agents to whose care they are confided." *United States* v. *Nashville, C. & St. L. R. Co.*, 118 U. S. 120, 125 (1886). See also *Guaranty Trust Co.* v. *United States*, 304 U. S. 126 (1938); *Stanley* v. *Schwalby*, 147 U. S. 508, 515 (1893). We would be most reluctant to conclude that every failure of an agency to observe a procedural requirement voids subsequent agency action, especially when important public rights are at stake. When, as here, there are less drastic remedies available for failure to meet a statutory deadline,[7] courts should not assume that Congress intended the agency to lose its power to act.

---

[7] The Administrative Procedure Act (APA), 5 U. S. C. §§ 701–706, entitles any person "adversely affected or aggrieved by agency action" to judicial review, § 702, unless the relevant statute precludes judicial review or "agency action is committed to agency discretion by law," § 701(a)(2). Clearly the statutory command that the Secretary "shall" act within 120 days does not commit such action to the Secretary's discretion. Moreover, nothing in CETA appears to bar an action to enforce the 120-day deadline. Cf. *CETA Workers Organizing Comm.* v. *City of New York*, 617 F. 2d 926, 934–936 (CA2 1980) (APA may not be used to circumvent § 106(b) complaint mechanism). Thus, it would appear that a complainant adversely affected by the Secretary's failure to act on a complaint could bring an action in the district court. The court would have the authority to "compel agency action unlawfully withheld or unreasonably delayed," § 706(1). If respondent is correct in arguing that Congress, in enacting § 106(b), intended to protect grant recipients from lengthy delays in audits, grant recipients such as respondent would be within the zone of interests protected by § 106(b), and would therefore have standing to bring an action under the APA to the same extent as a complainant. Cf. *Association of Data Processing Service Organizations, Inc.* v. *Camp*, 397 U. S. 150, 153 (1970). On the other hand, were § 106(b) intended only to protect complainants, there would be no need to provide grant recipients with any remedy at all—much less the drastic remedy respondent seeks in this case—for the Secretary's failure to meet the 120-day deadline.

The Ninth Circuit rejected the *Fort Worth National* line of precedent as being inconsistent with this Court's decision in *Mohasco Corp.* v. *Silver*, 447 U. S. 807 (1980). In *Mohasco*, we held that an action filed by a private plaintiff after the expiration of the 300-day time period provided in § 706(e) of the Civil Rights Act of 1964, 42 U. S. C. § 2000e–5(e), was jurisdictionally barred. In so holding, we gave controlling weight to the literal meaning of the statutory provisions, which stated that "a charge under this section shall be filed" within the specified time limits. See 447 U. S., at 815–817. However, there are two clear differences between the present case and *Mohasco*. First, legislatures routinely create statutes of limitations for the filing of complaints, and Congress' intention to create a statute of limitations in § 706(e) was certainly unexceptional. Indeed, the plaintiff in *Mohasco* nowhere alleged that § 706(e) was not a statute of limitations, but rather contended that the word "filed" should be defined in a way that would render his action timely. 447 U. S., at 818. Section 106(b), by contrast, does not merely command the Secretary to file a complaint within a specified time, but requires him to resolve the entire dispute within that time. This is a more substantial task than filing a complaint, and the Secretary's ability to complete it within 120 days is subject to factors beyond his control. There is less reason, therefore, to believe that Congress intended such drastic consequences to follow from the Secretary's failure to meet the 120-day deadline. Second, *Mohasco* involved a private right of action, and the plaintiff's failure to file a complaint prejudiced only that plaintiff. In the present case, by contrast, public rights are at stake, and the Secretary's delay, under respondent's theory, would prejudice the rights of the taxpaying public.

Respondent suggests that statutes setting deadlines for agency action should be interpreted to permit the agency to proceed after the deadline has expired only when agency inaction would prejudice a private citizen seeking some sort of

redress. When, as in this case, agency inaction will injure only the Federal Treasury, courts should read a command like that of § 106(b) as a statute of limitations or jurisdictional bar. We disagree with this argument for two reasons. First, the protection of the public fisc is a matter that is of interest to every citizen, and we have no evidence that Congress wanted to permit the Secretary's inaction to harm that interest any more than it would permit such inaction to injure an individual claimant. Second, the 120-day deadline clearly applies to investigations triggered by private complaints alleging that the individual complainant, perhaps a program participant or subcontractor, has been injured by a grant recipient's failure to comply with CETA's requirements. Indeed, the federal courts have uniformly held that the statutory complaint mechanism is the sole means of redress for a private party injured by a grant recipient's violation of CETA.[8] Thus, even under respondent's theory, § 106(b) cannot be jurisdictional, because it would then permit the Secretary's inaction to prejudice individual complainants seeking to enforce their rights under CETA. We hold, therefore, that the mere use of the word "shall" in § 106(b), standing alone, is not enough to remove the Secretary's power to act after 120 days.[9]

## B

Looking to other sources of congressional intent, we have found nothing in the history of the 1978 amendments to CETA, which added the 120-day deadline, to suggest that Congress intended to impose a jurisdictional limitation on

---

[8] See *Uniformed Firefighters Assn., Local 94, IAFF, AFL–CIO* v. *City of New York*, 676 F. 2d 20 (CA2 1982); *Kolman* v. *Milwaukee Area Technical College*, 548 F. Supp. 684 (ED Wis. 1982).

[9] We need not, and do not, hold that a statutory deadline for agency action can never bar later action unless that consequence is stated explicitly in the statute. In this case, we need not go beyond the normal indicia of congressional intent to conclude that § 106(b) permits the Secretary to recover misspent funds after the 120-day deadline has expired.

agency action. The only explicit discussion of the jurisdictional effect of the 120-day provision was a brief colloquy on the House floor between Representative Hawkins, one of the bill's sponsors, and Representative Obey, who offered the amendment that added the 120-day deadline:

"Mr. HAWKINS. Mr. Chairman, we have seen the amendment. We accept the amendment.

"If the gentleman would further yield, do I understand . . . that if the determination is not made in a specified time it shall not affect the Secretary's jurisdiction in the matter?

"Mr. OBEY. That is correct.

"Mr. HAWKINS. With that understanding we do accept the amendment." 124 Cong. Rec. 25230–25231 (1978).

Such statements by individual legislators should not be given controlling effect, but when they are consistent with the statutory language and other legislative history, they provide evidence of Congress' intent. *Grove City College* v. *Bell*, 465 U. S. 555, 567 (1984). In this case, the legislative history fully supports Representative Hawkins' interpretation of § 106(b).

One of the principal concerns underlying the 1978 amendments was the growing incidence of fraud and misuse of CETA funds by state and local governments. See H. R. Rep. No. 95–1124, pp. 3, 5, 13 (1978) (noting "widespread concern that there has been substantial fraud and abuse in the CETA program and insufficient staff devoted to monitoring and supervising the program"); S. Rep. No. 95–891, pp. 42–44 (1978). A primary purpose of the amendments was to strengthen the Secretary's hand in dealing with illegal practices. Thus the amendments contained numerous anti-fraud measures, including a provision for criminal sanctions, 18 U. S. C. § 665(a) (1976 ed., Supp. V), bonding requirements for grant recipients, 29 U. S. C. § 836, and authorization for the Secretary to terminate or suspend funding or to

take other corrective measures, § 816.   In a separate bill, Congress created an Office of the Inspector General in the Labor Department.   See Inspector General Act of 1978, Pub. L. 95–452, 92 Stat. 1101 (now codified as amended at 5 U. S. C. App. §§ 1–12.   The Conference Report for the 1978 CETA amendments made it clear that Congress expected the Secretary "to provide, within the new Office of Inspector General, for a unit whose sole responsibility will be that of monitoring the CETA program."   H. R. Conf. Rep. No. 95–1765, p. 123 (1978).

Congress was particularly concerned about the ability of program participants such as contractors, subgrantees, and employees to voice grievances and receive a prompt resolution.   See *St. Regis Mohawk Tribe, New York* v. *Brock,* 769 F. 2d, at 43 (citing House and Senate hearings on 1978 amendments).   The Senate noted that "[i]n some cases grievances have been either ignored, or there has been interminable delay in their resolution."   S. Rep. No. 95–891, *supra,* at 42.   In response to this problem, Congress required, in § 106(a), that each prime sponsor establish a grievance procedure that would provide for hearings and require a decision within 60 days after the filing of the grievance.   After exhausting the prime sponsor's grievance machinery, an interested party could, pursuant to § 106(b), file a complaint with the Secretary.   The legislative history makes it clear that Congress intended the 120-day deadline of § 106(b) to assure program participants the opportunity for a prompt resolution of grievances.   Senate Report No. 95–891, *supra,* at 16, for example, states: "A party who wishes to appeal to the Secretary either the formal or the informal decision of the prime sponsor has the right to a due process hearing and a determination on the merits of the case within 120 days."   Conspicuously absent is any reference to the possibility that the 120-day provision might convey rights upon the prime sponsor.

There is no indication in the legislative history that Congress was concerned that the Secretary was treating prime sponsors too harshly; to the contrary, the House and Senate Reports consistently voice Congress' belief that the Secretary had not been aggressive enough in discovering and rectifying abuses. The 120-day provision was clearly intended to spur the Secretary to action, not to limit the scope of his authority. Congress intended that "the Secretary should have maximum authority to protect the integrity of the program." S. Rep. No. 95–891, *supra*, at 21. It would be very odd if Congress had implemented that intent by cutting off the Secretary's authority to correct abuses just 120 days after learning of them.

## C

Respondent provides additional arguments, which we find unpersuasive, in support of the Ninth Circuit's decision. Respondent contends that even if the statute does not establish a jurisdictional bar to the Secretary's recovery of funds, the Secretary's own regulations do so. The Secretary's regulations, however, merely provide a timetable for the resolution of complaints and audits. See n. 3, *supra*. While they arguably go beyond the statute in applying the 120-day limit to investigations triggered by audits as well as those triggered by complaints, they do not specify any consequences of a failure to meet that deadline in the event of either an audit or a complaint. Thus, even if it were possible for the Secretary to create a jurisdictional limitation not contained in the statute, the language of the regulations cannot support respondent's contention that the 120-day provision is jurisdictional with respect to audits.

Respondent urges, if we do not find § 106(b) to affect the Secretary's jurisdiction, that we treat it like a statute of limitations that can vary depending on the complexity of the dispute or the culpability of the grant recipient. There is simply no authority in the statute or legislative history for the

courts to create such a remedy. The balancing of interests that respondent proposes is a task for Congress.

## IV

We hold that CETA's requirement that the Secretary "shall" take action within 120 days does not, standing alone, divest the Secretary of jurisdiction to act after that time. There is simply no indication in the statute or its legislative history that Congress intended to remove the Secretary's enforcement powers if he fails to issue a final determination on a complaint or audit within 120 days. Accordingly, the judgment of the Court of Appeals is

*Reversed.*