CITY OF CAMDEN, NEW
JERSEY, Petitioner,

v.

UNITED STATES DEPARTMENT
OF LABOR.

No. 86–3729.

United States Court of Appeals,
Third Circuit.

Argued Sept. 29, 1987.

Decided Oct. 22, 1987.

Laurence E. Rosoff (argued), Cherry Hill, N.J., for petitioner.

George R. Salem, Sol. of Labor, Charles D. Raymond, Associate Sol. for Employment and Training, Washington, D.C.

Harry L. Sheinfeld, Washington, D.C., Counsel for Litigation, Charles F. James (argued), U.S. Dept. of Labor, Washington, D.C., for respondent.

Before GIBBONS, Chief Judge, MANSMANN and ALDISERT, Circuit Judges.

OPINION OF THE COURT

ALDISERT, Circuit Judge.

In this case involving the Comprehensive Employment and Training Act (CETA), the City of Camden, New Jersey, petitions us to set aside the Secretary of Labor's order requiring the City to repay certain misspent federal funds. We will deny the City's petition.

I.

The petition involves Camden's CETA hiring during 1974 and 1975. At all times relevant here, the City was a prime sponsor under a CETA grant administered by the Department of Labor, Employment and Training Administration. Beginning in January 1975, the Department's New York Associate Regional Administrator, acting

as Grant Officer, conducted an investigation into charges of nepotism and political influence in the City's employment of CETA participants. The investigation resulted in a determination by the Associate Regional Administrator, on March 3, 1978, that 51 participants had been improperly hired and that CETA funds in varying amounts paid to the City should be repaid. The aggregate amount of the City's liability was determined to be $337,587.10.

The City requested, and was granted, a hearing before an Administrative Law Judge to contest its liability. During the course of the proceedings, the Associate Regional Administrator withdrew his challenge to the employment of several individuals so that the case before the ALJ eventually involved 44 individuals. On April 8, 1980, the ALJ issued a decision affirming the Associate Regional Administrator with respect to 26 hires and reversing as to 18. Of the affirmances, five involved violations of nepotism regulations and 21 involved political patronage violations.

On May 7, 1980, the City telegraphed an appeal of the ALJ's decision to the Secretary of Labor. The Secretary subsequently asserted jurisdiction and issued his final decision on October 16, 1986. The Secretary's decision reversed the ALJ as to three findings of improper employment and affirmed as to the remaining disallowances. The Secretary reduced the City's debt to $173,052.82 and ordered this amount repaid.

## II.

The CETA legislation, originally enacted in 1973, Pub.L. No. 93–203, 87 Stat. 838, was substantially revised by the CETA Amendments of 1978, Pub.L. No. 95–524, 92 Stat. 1909. CETA was designed to establish employment and training programs for unemployed and economically disadvantaged persons; the programs were to be carried out by "prime sponsors," states or units of local government. *See* 87 Stat. 841. The applicable CETA statutes and regulations in effect during Camden's disputed hiring practices prohibited both nepotism and political patronage in the selection

and advancement of participants in the program. *See id.* at 855 (section 208(f) of the Act); 29 C.F.R. § 96.26(b) (1974), 29 C.F.R. § 98.23(b) (1975) (political patronage); 29 C.F.R. § 96.26(c) (1974), 29 C.F.R. § 96.48 (1975) (nepotism). CETA was phased out as of September 30, 1983, Pub.L. No. 97–300, §§ 181(a), (e), (f)(4), 96 Stat. 1354–55 (1982). CETA's successor statute is the Job Training Partnership Act of 1982, Pub.L. No. 97–300, § 164, 96 Stat. 1348.

Camden raises three challenges to the Secretary's order of repayment. First, it contends that the six-year delay by the Secretary in ordering repayment is an abuse of administrative power. It argues that the Secretary's order should not be enforced due to a change in the City's financial condition during the time lapse. Second, it claims the order of repayment should be set aside because of the Secretary's failure to consider the equities under 29 U.S.C. § 816 (Supp. V 1976) in arriving at his decision. Finally, the City alleges that the Secretary's decision is not based on substantial evidence.

We may overturn the Secretary's decision if his factual determinations are not supported by substantial evidence. 29 U.S.C. § 817(b) (Supp. V 1976) (section 107(b) of the Act). *See Atlantic County v. United States Dep't of Labor*, 715 F.2d 834, 837 (3d Cir.1983). Under the Administrative Procedure Act, the Secretary's decision cannot be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. *See* 5 U.S.C. § 706.

## III.

■ The Secretary is empowered to recoup CETA funds advanced to governmental entities when it becomes clear that such funds were misspent. *Atlantic County*, 715 F.2d at 836–37. In the context of an analogous statute, the Supreme Court has recognized that federal grant programs have a contractual aspect. "The State gave certain assurances as a condition for receiving the federal funds, and if those assurances were not complied with, the Federal Government is entitled to recover

amounts spent contrary to the terms of the grant agreement." *Bennett v. Kentucky Dep't of Educ.*, 470 U.S. 656, 663, 105 S.Ct. 1544, 1549, 84 L.Ed.2d 590 (1985) (Elementary and Secondary Education Act of 1965); *see also Bennett v. New Jersey*, 470 U.S. 632, 639, 105 S.Ct. 1555, 1559, 84 L.Ed.2d 572 (1985) (same). In *Heckler v. Community Health Serv. of Crawford County, Inc.*, 467 U.S. 51, 63, 104 S.Ct. 2218, 2225, 81 L.Ed.2d 42 (1984), the Court stated that "[p]rotection of the public fisc requires that those who seek public funds act with scrupulous regard for the requirements of law; respondent could expect no less than to be held to the most demanding standards in its quest for public funds."

In *Brock v. Pierce County*, 476 U.S. 253, 106 S.Ct. 1834, 90 L.Ed.2d 248 (1986), the Court held that the Secretary does not lose his power to recover misused CETA funds when he fails to issue a final determination on the question pursuant to 29 U.S.C. § 816 (Supp. V 1976) within 120 days of receiving a complaint or audit. In disapproving our holding in *Lehigh Valley Manpower Program v. Donovan*, 718 F.2d 99 (3d Cir. 1983), the Court in *Brock* stated that "[w]e would be most reluctant to conclude that every failure of an agency to observe a procedural requirement voids subsequent agency action, especially when important public rights are at stake." 476 U.S. at ——, 106 S.Ct. at 1839. Examining the legislative history of CETA's 1978 Amendments, the Court noted that Congress' primary purpose was to strengthen the Secretary's hand in dealing with illegal practices. "There is no indication ... that Congress was concerned that the Secretary was treating prime sponsors too harshly," 476 U.S. at ——, 106 S.Ct. at 1840; to the contrary, the Court stated that "the House and Senate Reports consistently voice Congress' belief that the Secretary had not been aggressive enough in discovering and rectifying abuses." *Id.*

In entertaining Camden's time-bar or laches argument, and recognizing that the Supreme Court has disapproved a case of this court that followed a path similar to that requested by the City, the adage "once burned, twice learned" seems appropriate.

Against this background, we will not overturn the repayment order based on the Secretary's six-year delay in rendering his decision. Congress has given the Secretary wide latitude to recoup CETA funds; it has mandated aggressive action to discover and rectify abuses. Protection of the public fisc requires no less. Furthermore, the City has not demonstrated that the delay prejudiced its ability to defend the merits of its position. It can be said that the City actually benefitted from the delay. The City was able to postpone its repayment and thereby gain use of the disputed monies for an additional six years. Moreover, the Secretary saw fit to reduce the City's debt over $150,000, from an initial liability of $337,587.10 to $173,052.82. Finally, we note that this is an action to recover a debt; it is not a proceeding to impose penal sanctions. *See Bennett v. Kentucky Dep't of Educ.*, 470 U.S. 656, 662–63, 105 S.Ct. 1544, 1548–49, 84 L.Ed.2d 590 (1985) (Federal Government's recovery of misused Title I funds more in the nature of an effort to collect upon a debt than a penal sanction; fairness of imposing sanctions irrelevant).

We note in passing that the Secretary's six-year framework in concluding this dispute does not reflect exemplary or efficient administrative conduct. However, the strong contractual nature of CETA funds, and the fact that the City has failed to demonstrate a legitimate prejudice, dissuades us from setting aside the Secretary's repayment order. *See Panhandle Coop. Ass'n v. EPA*, 771 F.2d 1149, 1153 (8th Cir.1985) (aggrieved party must show prejudice before agency action will be set aside for lack of punctuality); *Estate of French v. FERC*, 603 F.2d 1158, 1167 (5th Cir.1979) (nineteen-year delay will not affect review where no showing of prejudice); *Chromcraft Corp. v. EEOC*, 465 F.2d 745, 747 (5th Cir.1972) (court reviewing agency delay must take due account of the rule of prejudicial error); *Irish v. SEC*, 367 F.2d 637, 639 (9th Cir.1966) (no prejudice where aggrieved party failed to exercise right to compel agency to expedite proceedings),

*cert. denied,* 386 U.S. 911, 87 S.Ct. 860, 17 L.Ed.2d 784 (1967).

## IV.

██ Camden also contends that the order directing repayment should be set aside because the Secretary failed to consider the equities under 29 U.S.C. § 816 (Supp. V 1976) in arriving at his decision. We disagree.

Under the 1978 Amendments, the Secretary "shall ... order the repayment of misspent funds ... unless, in view of special circumstances *as demonstrated by the recipient,* the Secretary determines that requiring repayment would not serve the purpose[ ] of attaining compliance...." 29 U.S.C. § 816(d)(2) (Supp. V 1976) (section 106(d)(2) of CETA) (emphasis supplied). The Secretary promulgated 20 C.F.R. § 676.88(c) (1979) to implement section 106(d)(2); the regulation set forth five factors to be considered in determining whether to waive recoupment of misspent CETA funds.

CETA's section 106(d)(2) clearly places the burden of demonstrating equities on the recipient of federal funds, here, the City of Camden. However, the record shows that Camden did not demonstrate equities either to the ALJ or the Secretary that would dictate waiving recoupment of misspent funds. Camden conceded at oral argument that it did not present equitable factors to the Secretary when it appealed the ALJ's decision. Nor did it file any materials with the Secretary urging waiver of repayment due to the City's financial difficulties that accrued during the Secretary's delay in deciding the case. In short, the City did nothing to present equitable arguments to the ALJ or Secretary, even though it had sufficient opportunity to do so. In *Maine v. United States Dep't of Labor,* 669 F.2d 827 (1st Cir.1982), the court held that the ALJ did not err in failing to weigh the equities absent a specific showing by the City. "Since [petitioner] failed to ask that the Grant Officer exercise [his] discretion in accord with 20 C.F.R. § 676.88(c) (1979), neither the Grant Officer nor any subsequent reviewing au-

thority within the Department was required to make findings under [5 U.S.C.] § 557(c)." *Id.* at 832; *see also Action, Inc. v. Donovan,* 789 F.2d 1453, 1459–60 (10th Cir.1986).

Other Courts of Appeals have taken stronger positions. In *City of St. Louis v. United States Dep't of Labor,* 787 F.2d 342, 349 (8th Cir.1986), the court concluded that "the Secretary is not required to consider the equities of the situation; rather he must determine whether violations have occurred, and if so, he must impose sanctions." *See also Illinois Migrant Council v. United States Dep't of Labor,* 773 F.2d 180, 183 (7th Cir.1985) (ALJ not required to consider equities before ruling that organization should repay misspent CETA funds to Department); *cf. Bennett v. New Jersey,* 470 U.S. 632, 646, 105 S.Ct. 1555, 1564, 84 L.Ed.2d 572 (1985) (where Secretary properly concludes that Title I funds were misused, "a reviewing court has no independent authority to excuse repayment based on its view of what would be the most equitable outcome"); *Bennett v. Kentucky Dep't of Educ.,* 420 U.S. 656, 662–63, 95 S.Ct. 1191, 1195–96, 43 L.Ed.2d 530 (1985) (where Secretary properly determines misuse of Title I funds, fairness of recovery is irrelevant). The Courts of Appeals for the Seventh and Eighth Circuits grounded their rulings in the legislative history of the 1978 Amendments to the Act, which demonstrates that "Congress intended to give the Department of Labor broad powers to enforce the Act once it has determined that a violation has occurred." *Illinois Migrant Council,* 773 F.2d at 183; *see City of St. Louis,* 787 F.2d at 349. *But see Quechan Indian Tribe v. United States Dep't of Labor,* 723 F.2d 733, 736 (9th Cir.1984); *Onslow County v. United States Dep't of Labor,* 774 F.2d 607, 614 (4th Cir.1985).

Even if the City carried its burden under section 106(d)(2), we find that the Secretary did show an awareness of the equitable factors in considering the case. His decision concerning Mark Del Grande, a City employee, is a case in point. The City terminated Del Grande's employment un-

der strong pressure from the Employment and Training Administration (ETA) to remedy its allegedly wrongful CETA hirings. The Secretary, however, concluded that Del Grande should not have been removed from his CETA-funded job because he was not hired on the basis of political patronage considerations. App. at 65. In refusing to sanction the City for the improper termination, the Secretary stated that it would be "inequitable to require the City to provide Del Grande with remedial relief because the City's actions resulted from its good faith attempt to resolve an outstanding issue with ETA through informal resolution." *Id.* at 66. Penalizing the City's attempt to conform to the ETA's objectives and requirements would, in the Secretary's view, "weaken the incentive for the voluntary settlement of disputes between ETA and the recipient of CETA funds." *Id.*

Therefore, the Secretary did consider equitable factors in rendering his decision. We hold that the Secretary's order of repayment should not be set aside on the grounds advanced by the City.

## V.

The Secretary affirmed the ALJ's determination that 23 of the City's CETA hires in 1974 and 1975 violated regulations prohibiting political patronage and nepotism. The City contends that the Secretary's determination was not based upon substantial evidence as required under 29 U.S.C. § 817(b) (Supp. V 1976). We see no merit in this claim.

During the course of examining the City's hiring practices, the Department's investigator testified that he reviewed all applications for CETA employment in 1974. SApp. at 11. Out of 1200 applicants, approximately 400 were hired or one in three. Review of the 1200 applications also revealed that fourteen applicants had some political or family political connection. All of these applicants were hired. *Id.* The investigator undertook a similar study for the City's 1975 hires, but could not detect a cognizable pattern because the records were incomplete. The Associate Regional Administrator subsequently concluded that all those hired in 1974 and 1975 who were related to politicians, or who had a family political connection, were hired for that reason.

To ameliorate any weaknesses in the Department's statistical conclusions, the ALJ thoroughly reviewed the circumstances surrounding each employee allegedly hired because of improper considerations. The Secretary, in affirming the ALJ's findings as to 23 employees, considered the entire record. We are satisfied that there is substantial evidence to support the claimed violations.

## VI.

The petition for review will be denied.