# United States Court of Appeals for the Federal Circuit

---

**HITACHI HOME ELECTRONICS (AMERICA), INC.,**
*Plaintiff-Appellant,*

v.

**UNITED STATES,
UNITED STATES CUSTOMS AND BORDER
PROTECTION,** AND
**ROSA HERNANDEZ, PORT DIRECTOR,
UNITED STATES CUSTOMS AND BORDER
PROTECTION,**
*Defendants-Appellees.*

---

2010-1345

---

Appeal from the United States Court of International Trade in case no. 09-CV-0191, Chief Judge Jane A. Restani.

---

## ON PETITION FOR PANEL REHEARING AND REHEARING EN BANC

---

SIDNEY N. WEISS, of New York, New York, filed a petition for panel rehearing and rehearing en banc for plaintiff-appellant. With him on the petition was STEVEN B. ZISSER, Zisser Customs Law Group, PC, of San Diego, California.

JUSTIN R. MILLER, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of New York, New York, filed a response to the petition for defendants-appellees. With him on the re-

sponse were BARBARA S. WILLIAMS, Attorney in Charge, International Trade Field Office; TONY WEST, Assistant Attorney General, and JEANNE E. DAVIDSON, Director, of Washington, DC. Of counsel was PAULA S. SMITH, Office of Assistant Chief Counsel, International Trade Litigation, United States Customs and Border Protection, of New York, New York.

JOHN M. PETERSON, Neville Peterson LLP, of New York, New York, for amicus curiae American Association of Exporters and Importers. With him on the brief was RICHARD F. O'NEILL.

MICHAEL S. O'ROURKE, Customs and International Trade Bar Association, of New York, New York, for amicus curiae Customs and International Trade Bar Association.

---

Before RADER, *Chief Judge*, NEWMAN, LOURIE, BRYSON, LINN, DYK, PROST, MOORE, O'MALLEY, REYNA, and WALLACH, *Circuit Judges*.

PER CURIAM.

REYNA, *Circuit Judge*, with whom NEWMAN, *Circuit Judge*, joins, dissents from the denial of the petition for rehearing en banc.

### O R D E R

A combined petition for panel rehearing and rehearing en banc was filed by Plaintiff-Appellant, and a response thereto was invited by the court and filed by Defendants-Appellees.

The petition for panel rehearing was considered by the panel that heard the appeal, and thereafter the petition for rehearing en banc, response, and briefs amicus curiae were referred to the circuit judges who are authorized to request a poll of whether to rehear the appeal en banc. A poll was requested, taken, and failed.

Upon consideration thereof,

IT IS ORDERED THAT:

(1) The petition of Plaintiff-Appellant for panel rehearing is denied.

(2) The petition of Plaintiff-Appellant for rehearing en banc is denied.

(3) The mandate of the court will issue on April 6, 2012.

FOR THE COURT

| March 30, 2012 | /s/ Jan Horbaly |
|---|---|
| Date | Jan Horbaly<br>Clerk |

# United States Court of Appeals for the Federal Circuit

---

**HITACHI HOME ELECTRONICS (AMERICA), INC.,**
*Plaintiff-Appellant,*

v.

**UNITED STATES,
UNITED STATES CUSTOMS AND BORDER
PROTECTION, AND
ROSA HERNANDEZ, PORT DIRECTOR, UNITED
STATES CUSTOMS AND BORDER PROTECTION,**
*Defendants-Appellees.*

---

2010-1345

---

Appeal from the United States Court of International Trade in Case No. 09-CV-0191, Chief Judge Jane A. Restani.

---

REYNA, *Circuit Judge*, dissenting from the denial of the petition for rehearing en banc, with whom NEWMAN, *Circuit Judge*, joins.

---

This case presents an issue of paramount importance to the U.S. trade community and warrants *en banc* rehearing by this court.

The issue on appeal is whether the two-year deadline set out in the Customs protest statute, 19 U.S.C. § 1515(a), is mandatory or merely aspirational. As my dissenting opinion in this case explains in detail, the statute's command is clear that Customs "shall review . . . and shall allow or deny" every protest on its merits "within two years." *See generally Hitachi Home Elecs., Inc. v. United States*, 661 F.3d 1343, 1351-61 (Fed. Cir. 2011) (hereinafter, "*Dissent*"). Much is argued about whether the word "shall" imposes an obligation upon Customs, yet we cannot avoid that Congress chose the strongest imperative in the English language, fully intending to express a charge that was not to be evaded.

The importance of correctly resolving this issue is underscored by the amicus briefs filed by the American Association of Exporters and Importers ("AAEI") and the Customs and International Trade Bar Association ("CITBA"), which strongly support *en banc* review to overturn the majority's decision. As explained by CITBA, "importers require timely certainty as to their liability for duties on imported goods. Any interpretation of the law that creates even a technical possibility that Customs may refuse to act on a protest for more than two years is simply inconsistent with today's business realities." CITBA Br. at 8.

Congress addressed those business realities when it set out plain language that there can be no other result under § 1515 than a protest being "allow[ed] or den[ied]" upon the two-year deadline. The majority, however, writes into the statute a third option for Customs—to delay beyond the two years or, in its discretion, to never make a substantive determination on a protest.

Lest there be any doubt as to the mandatory nature of § 1515, the legislative history repeatedly made clear that the deadline was an "overall limit" or "maximum" time period by which Customs "must" complete its protest review. S. Rep. No. 91-576, at 11, 28. When § 1515 was enacted in 1970, Customs was not viewed as likely to exceed—or even require—the full two-year period to complete its review of all protests. Indeed, data provided by Customs to Congress at that time showed that "all protests were processed in an average period of 58 days from the date of receipt, and more than 97 percent were fully processed within 90 days of the date of their receipt." S. Rep. No. 91-576, at 28. Congress gave Customs a much longer deadline than was necessary so as to afford protestors "*a maximum opportunity for meaningful administrative review.*" H. Rep. No. 91-1067, at 28 (emphasis added). Congress understood that the substantive value derived from the issuance of a protest determination is premised on Customs' undertaking a meaningful analysis of specific business-related facts. Congress wisely recognized that the increasingly global trade environment would come to mark protests with technicalities and complexities, such as rules of origin requirements under free trade agreements and cross-border trade between related companies, and acted on the need for certainty and predictability for U.S. trade through timely and meaningful administrative protest reviews by Customs.

Hence, Congress intended a departure from the practice prior to the Customs Courts Act of 1970 (which codified § 1515), whereby Customs' failure to decide a protest within the then-proscribed 90-day time period caused Customs to lose jurisdiction, and the protest was automatically transferred to the Court of International Trade for review. There was no provision to "allow" a protest if the 90-day deadline was not met. The majority's decision

frustrates these legislative objectives by interpreting the statute in a way that disincentivizes timely and meaningful administrative review and converts protestors into unwilling plaintiffs who face further considerable delay and litigation costs. Indeed, the Hitachi protests in this case were filed as early as 2005, meaning that Customs has permitted those protests to remain undecided nearly five years beyond the two-year deadline. Even Hitachi's most recent protests have languished for more than three years beyond the two-year deadline. Yet the majority instructs Hitachi that if it believes the delay is unjustifiable, it should now abandon the protests and seek a deemed denial under 19 U.S.C. § 1515(b) so as to be free to sue in court. This result inspired by the majority in dicta is clearly not envisioned in the statute or its legislative history.

The linchpin of the majority opinion is reliance upon statutory construction cases such as *Brock v. Pierce County*, 476 U.S. 253 (1986), and its progeny. The majority reads these cases to suggest a "rule" that renders the mandatory "shall" language merely aspirational because § 1515 allegedly fails to specify a consequence for Customs' inaction. These cases do not compel the majority's ultimate conclusion because § 1515's two-year deadline was not interpreted in any of them. There is no applicable "precedent" to this case. Thus, if we must construe the plain language of § 1515, we should do so in accordance with its own unique text and in light of its own unique legislative history. To be sure, analogous precedent may in certain circumstances be helpful to issues of statutory construction, but *Brock* and its progeny are unhelpful here because they involve short statutory deadlines of a fundamentally different character than the two-year deadline of § 1515. *See*, *e.g.*, *Dissent* at 1354 (explaining that "[t]he short time limits [of 120 days or

less] in the respective statutes [in *Brock* etc.] were plainly intended to 'spur' the agency to take prompt action in various contexts," such as in bringing criminal indictments).

Nor is the majority correct that the statute does not specify a consequence for Customs' inaction. The statute plainly provides that Customs shall at the end of the two-year time period either allow or deny the protest. If it denies the protest, Customs is required to issue a denial letter stating reasons for the denial so that the protestor can make future business decision on the basis of the denial, or to serve as a basis to challenge the denial in court. *See* 19 U.S.C. § 1515(a). If Customs does not deny, then it faces the consequence of its inaction by having to allow the protest, which means that Customs is required to issue a notice of reliquidation and a refund check for any overpaid duties. The majority apparently takes issue with the notion of allowance by operation of law absent statutory language that describes a protest as being "deemed allowed" by inaction. Finding only the word "allowed" in § 1515, in effect the majority is looking for a notice of allowance. Yet, in these types of Customs transactions, the allowance of a protest requires nothing more than a notice of reliquidation and a refund. A detailed letter regarding an allowance is not required since protestors have no incentive or viable legal basis to challenge the allowance in court. Indeed, the Committee Reports explained that "no useful purpose would be served by imposing on customs the burden of mailing separate notices of allowance" since "protest allowances are reflected in the notices of reliquidation and in refund payments." S. Rep. No. 91-576, at 30 (1969); H. Rep. No. 91-1067, at 29-30 (1970).

The government attempts to ease this court's concerns regarding delay by representing that only about 8.7% of protests require more than the two-year statutory time period for Customs to complete its review. *See Government's Response to Hitachi's Petition for Panel Rehearing and Rehearing En Banc*, at 11 (representing that "for calendar year 2009, 36,040 protests were filed . . . [and] [o]f that number, 32,908 protests (approximately 91.3%) were decided . . . within two years"). On the scale at which protests are filed, however, even this small fraction amounts to 3,132 undecided protests in 2009 alone. Over time, the undecided protests represent a very large number of imports and a massive sum of contested duties. Significantly, the government argues that protests like Hitachi's take a long time to review because they are difficult and complex, but this argument precisely demonstrates why such protests should be timely resolved. When considered in the aggregate, the large number of undecided protests, the substantial economic value of the duties held in abeyance, and the lack of timely, meaningful administrative guidance on the most significant of important trade issues does nothing but hinder trade in a manner opposite of what Congress intended when it enacted § 1515.

If Customs' best efforts to manage its docket cannot result in all protests being decided within the two-year deadline, its remedy lies before Congress. Under the majority's rule, however, Customs has no incentive to appeal to Congress or attempt to reduce the percentage of undecided protests. As aptly explained by the AAEI, "[i]f processing protests is a discretionary duty that may be discontinued without consequence, [Customs] will logically concentrate its resources on revenue-collecting and law-enforcement activities, rather than protest-processing activities, which can only result in the flow of monies out

of the treasury." AAEI Br. at 9. In light of § 1515's plain language and clear purpose, we should not permit any more protests to languish in this fashion.

For the foregoing reasons, I conclude that Customs' practice of indefinitely putting off its statutory obligation to review and decide *all* protests within two years should be put to an end.